**James Ronnie WHITE, Relator,**

v.

**The Honorable Ruth J. BLAKE, Judge, 321st Judicial District Court of Smith County, Texas, Respondent.**

Nos. 12–92–00386–CV, 12–92–00400–CV and 12–92–00401–CV.

Court of Appeals of Texas, Tyler.

July 26, 1993.

Rehearing Denied Aug. 13, 1993.

Deborah Race, Tyler, for relator.

Donald Killingsworth, Tyler, Ad Litem.

Bryan Johnston, Tyler, for respondent.

BILL BASS, Justice.

Relator James Ronnie White ("Relator"), a resident of the State of Alabama, comes before us this time [1] on three original mandamus proceedings. Each arises out of Respondent's exercise of jurisdiction over Relator's daughter, K_B_W_ and Relator's relationship with and access to her. Because of the complex background of these cases, we will first outline the sequence of events which led to these proceedings.

In 1983, Relator and Talisa Cassel ("Mrs. Cassel") were divorced by decree entered by the Houston County Court in Houston County, Alabama. They were found to be the parents of a child, K_B_W_. By agreement of the parties, incorporated into the divorce decree, Mrs. Cassel was given custody (equivalent, in Texas, to managing conservatorship) of K_B_W_, and Relator was granted reasonable visitation. Relator was to pay child support. Mrs. Cassel thereafter married Scott Cassel ("Mr. Cassel").

The terms of the original decree were subsequently modified on November 25, 1986. Apparently Mrs. Cassel alleged that the Relator had committed various acts of sexual abuse upon K_B_W_ and sought to terminate his rights of visitation in the Circuit Court of Houston County, Alabama, Family Division ("Family Court"). The Alabama Family Court entered the following findings:

1. [T]he Court does not find that [Relator] has in any way sexually abused or molested the minor child of the parties as is claimed by [Mrs. Cassel]. However, the Court does find that, for whatever reason, [Mrs. Cassel] is gen-

uinely but mistakenly sincere in her claims.

2. that [Mrs. Cassel's] animosities toward [Relator], false claims toward [Relator], and denying the minor child association with her father, are actions which are in and of themselves seriously harmful to the minor child and not in the child's best interests.

3. that putting the minor child through further questioning concerning the claims in this case, testing, evaluation, or treatment would be detrimental to the minor child.

The Alabama court ordered all treatment, testing and questioning of the child to stop. Relator was given specific unsupervised visitation with the child. The Alabama court further ordered that "[I]n order to assure that [Relator] is allowed to exercise such visitation in that [Mrs. Cassel] has failed to abide by previous Orders of this Court and has indicated that she might not abide by the present Order of this Court, the Houston County Department of Human Resources is given joint custody of the minor child of the parties, [K_B_W_], along with [Mrs. Cassel] until further order of the Court." Mrs. Cassel was ordered to pay her own attorneys fees, the cost of investigative psychological examinations and the guardian ad litem's fee.

Subsequently, the case was transferred from the Family Court to the District Court, Juvenile Division ("Juvenile Court") of Houston County, Alabama. In June, 1990, the Department of Human Resources ("DHR") petitioned the court to be relieved from its partial custody of the child. In its sworn petition, the DHR social worker stated that both parents had cooperated with her with respect to visitation between the child and Relator and DHR's control of the child was no longer necessary for the best interests of the child. The DHR requested that instead of a custodial role, it be placed in a role of supervising the visitation between the child and Relator. By order

---

**1.** Relator filed his first mandamus action against Judge Blake last fall. In our cause no. 12–92–00308–CV, Relator sought to compel the judge to rule upon Relator's application for a writ of *habeas corpus*. After hearing this Court conditionally granted the writ, and ordered Judge Blake to rule on Relator's application.

signed July 12, 1990, the judge of the Juvenile Court granted DHR's motion.

In November of 1990, Relator filed a Petition to Modify and Petition to Terminate and Revoke Protective Supervision. In that petition, Relator alleged that he had been denied visitation with his child, that the DHR had not enforced any visitation with the child and that the child was not in need of supervised visitation with him. He proposed a schedule of visitation. Apparently a hearing on Relator's petition was set for December 19, 1990. After three continuances sought by Mrs. Cassel's counsel, Relator filed a motion to dismiss his petition in Juvenile Court, which the Juvenile Court Judge granted on March 22, 1991.

At about the same time as the dismissal of the action in Juvenile Court, Relator filed a Motion to Enforce Visitation Rights and Motion to Terminate and Revoke Protective Supervision of D.H.R. in Family Court. The motion was essentially the same as the one dismissed by the Juvenile Court. On June 24, 1991, the Family Court issued a pendente lite order regarding visitation, counseling of all parties, and past due child support. Mrs. Cassel filed motions to set aside that order and sought to enforce the previous order of the Juvenile Court. On October 2, 1991, the Juvenile Court issued an order asserting exclusive jurisdiction over the child and enjoining the parties from seeking relief in the Family Court. Thereafter the Family Court issued an order exercising authority over the child and enjoining the parties from seeking relief in the Juvenile Court. The jurisdictional dispute between the Alabama courts was resolved when Relator sought a writ of prohibition from the Alabama Court of Civil Appeals against the Juvenile Court. On February 28, 1992, that court found that the Juvenile Court was without jurisdiction to decide visitation with the child and the writ was issued prohibiting the judge of the Juvenile Court from assuming jurisdiction of the case involving visitation and custody. Mrs. Cassel sought mandamus relief from the Appeals Court decision in the Alabama Supreme Court. Her petition was denied on June 16, 1992.

In October of 1991, while the intrastate jurisdictional battle was being waged, Mr. and Mrs. Cassel took K_B_W_, and they moved to Smith County, Texas. Following the Alabama Appellate Court's decision of February 28, 1992, Relator filed an Amended Petition for Contempt and for Modification of Divorce Decree for Custody in Family Court. He alleged that Mrs. Cassel had not permitted him to visit the child since September 1991, since which time he had neither heard from the child nor been informed of her whereabouts. After alleging a material change in circumstances, Relator alleged that placing sole custody of K_B_W_ with him would be in her best interests.

After a hearing on June 2, 1992, at which both Relator and Mrs. Cassel were present, the Family Court entered an order on June 3, 1992 pertaining to the contempt issues presented in Relator's amended petition. In that order it found that Mrs. Cassel was in contempt of court for failure to comply with its previous order regarding visitation, and that Mrs. Cassel had moved K_B_W_ to Texas and failed or refused to notify Relator that she had moved or provide him with her address. Further the court found that Mrs. Cassel had contemptuously "sought to refuse all efforts by the Courts to promote a relationship of the father and daughter," and provided that "the Court shall take under submission the issue of custody between the parties." Mrs. Cassel was found in contempt and taken into custody. Later that day, the Family Court entered an amended order reducing the amount of bond required for Mrs. Cassel's release and conditioned her release from custody upon "it being made known to the Court that the said child is available for visitation and upon her posting the said bond."

On June 24, 1992, the Alabama court entered an Order of Modification that modified the Final Judgment of Divorce as it pertained to Relator's rights to unsupervised visitation with K_B_W_. The order is prefaced as follows:

The matters before the court for consideration are Mr. White's Petition to secure unsupervised visitation with the minor child of the parties, [K_B_W_], and Amended Petition for Contempt and Custody of said child. A hearing having been held thereon and testimony and evidence having been presented, upon consideration of such, it is hereby OR-DERED, ADJUDGED AND DECREED BY THE COURT ... (emphasis added)

Under this June 24, 1992 order, Relator was given unsupervised visitation with the child for "a period of six weeks beginning immediately upon [Relator] receiving the said child into his custody" and on various holidays. Mrs. Cassel was ordered to deliver the child to the home where Relator resided. However, the Family Court *expressly reserved* its ruling on the issue of custody.

On July 3, 1992, the Alabama Family Court entered an Ex Mero Motu Amendment[2] to the order of June 24, 1992: That amendment revised paragraph (1)(a) and (g) to provide:

Paragraph (1)

a. A period of six weeks beginning June 24, 1992. However, if the [Relator] fails to gain possession of the child on that date the visitation period will begin for a period of six weeks upon the date in which he obtains possession of the child.

g. From June 15th through July 15th of each year beginning June 15, 1993, and continuing each year thereafter.

All other provisions of said order are to remain in full force and effect.

Thereafter, on July 6, 1992, the Family Court entered an order addressing the sole remaining issue raised by Relator's amended petition which had been heard on June 2, 1992, and taken under advisement by the Court. In the Court's order of July 6th, the court awarded temporary custody of the child to Relator in addition to the visitation ordered in the June 24 and July 3 orders. The judge specifically recited in that order that the matter was heard on June 2, 1992. In that order the Alabama court also expressly reserved jurisdiction to modify the temporary custody pending a final disposition of permanent custody. The order directed anyone in possession of the child to deliver the child to the office of Relator's Alabama attorney.

In the meantime, the Cassels were busy attempting to invoke the jurisdiction of the Texas courts in the battle over the child. On June 4, 1992, two days after Mrs. Cassel was found in contempt in Alabama, Mr. Cassel, K_B_W_'s stepfather, filed an application for a protective order pursuant to chapter 71 of the TEXAS FAMILY CODE[3] in the 321st Judicial District Court of Smith County, Texas. In that application Cassel summarized the state of the proceedings in Alabama as follows:

"At present, each of said courts has issued a Restraining Order against the parties, prohibiting them from filing any further actions in any other court concerning the child. The rulings of those Courts are currently the subject of a Writ of Prohibition pending with the Alabama Supreme Court ... The child who is the subject of this action has been a resident of the State of Texas for a period substantially in excess of six (6) months, which makes Texas the home state of the child. However, the mother of the child, with whom the child currently resides, has been unable to transfer jurisdiction of this cause to the proper court in the State of Texas due to the injunctions pending in the various courts of Alabama."[4]

---

**2.** "Of his own mere motion; of his own accord; voluntarily and without prompting or request." BLACK'S LAW DICTIONARY, Fifth Edition, 1979, p. 516

**3.** All section numbers cited hereinafter will refer to the current edition of the TEXAS FAMILY CODE, unless otherwise specified.

**4.** These statements misrepresent several facts: By the admission of Mr. Cassel's attorney, the child was moved to Texas in early October 1991; thus, she had lived in Texas approximately eight months; only two months longer than the time necessary to establish a new home state. Additionally, Mr. Cassel failed to tell the Texas court that the jurisdictional dispute in Alabama had been ruled upon by the Alabama Court of Civil Appeals in its opinion of February 28, 1992, and was only before the Alabama Supreme Court on

Mr. Cassel alleged that Relator had engaged in family violence and sought an order preventing Relator from having any contact with the child.

On July 1 and/or 2, 1992,[5] Respondent held a hearing on the application for a protective order. Relator and his attorney made a special appearance at the hearing, but departed after Respondent denied Relator's motion for special appearance. Relator did not participate in the hearing. After the hearing, Respondent made findings that Relator and his attorney had appeared and announced "ready", that she denied Relator's special appearance, that she had jurisdiction, that family violence had occurred and was likely to continue, and she entered a protective order that enjoined Relator from any contact with the child. Respondent also appointed an attorney ad litem ("ad litem") to represent the child and ordered the child to be evaluated by psychologists. Relator was ordered to participate in a joint evaluation session and to pay all the costs of the evaluation as well as half of the ad litem's fees. A hearing for review of visitation was set for August 2, 1992, but the protective order was expressly made effective until July 2, 1993. No appeal was taken from the protective order.

Instead, on July 9, 1992, Relator filed an application for a writ of habeas corpus with Respondent's court. By that application Relator sought to enforce the orders of the Alabama court giving him possession of the child for six weeks. Attached to his application were exemplified copies of the June 24, 1992 order of the Alabama Family Court, and the July 6, 1992 order awarding temporary custody of the child to Relator. Apparently a hearing was finally held on Relator's application on August 13, 1992. No order was entered until October 16, 1992, after this court ordered Respondent to rule on the application. In that order Respondent found that the period of possession sought to be enforced ended on August 19, 1992, and therefore Relator was not presently entitled to possession of the child pursuant to any court order and the application was moot. She also found that the July 6, 1992 order awarding temporary custody of the child to Relator was entered without notice and opportunity to be heard, and consequently, it was not enforceable. She further found that there was a serious immediate question concerning the welfare of the child if the child were placed in the unsupervised possession of Relator because "evidence has been presented which shows ... that the child [K_B_W_] has been the victim of sexual abuse perpetrated by JAMES RONNIE WHITE." Based on these findings, Respondent denied the writ, and ordered Relator to pay $2,000.00 to the ad litem appointed in the protective order matter. Relator was also ordered to pay $2,000.00 attorney's fees to one Bryan Johnston. However, at oral arguments, Johnston stated that he had only appeared on behalf of the stepfather, and that while he had attended the hearing on the application for a writ of habeas corpus, he had not participated in the hearing.

On October 30, 1992, Relator filed a motion to reconsider the denial of the application for a writ of habeas corpus. He contested the Respondent's findings and legal

---

a writ of mandamus against the Court of Civil Appeals. Furthermore, there is no indication that the mother had made any effort to "transfer jurisdiction" of the matters. Finally, the application makes no mention of the fact that on the date it was filed in Texas, the mother was involved in a hearing in Alabama on the subject of her failure to comply with the orders of the Alabama court and on Relator's petition to modify the custody of the child. However the affidavit of Cassel attached to the application does acknowledge that a hearing was set for that day in Alabama with the purpose of determining whether to grant the Relator's motion for unsupervised visitation. No mention was made of the contempt action against Mrs. Cassel.

**5.** The protective order states that the trial court heard Mr. Cassel's application for protective order on July 2, 1992; however, Mr. Cassel has filed with this Court, the first of three volumes of statement of facts entitled "HEARING ON REQUEST FOR PROTECTIVE ORDER AND WRIT OF HABEAS CORPUS" and dated July 1, 1992. Volume 1 of this statement of facts does not contain the actual hearing on the protective order, but instead, deals with preliminary matters pertaining to Relator's special appearance, and Respondent's summation of her telephonic conversation of Judge Holloway, the Family Court judge for Houston County, Alabama.

conclusions. Specifically Relator pointed out to Respondent that the June 24th order giving Relator possession of the child until August 19th had been amended to provide for six weeks of visitation upon Relator obtaining possession of the child. A certified copy of the amendment had been attached to the application for habeas relief. Relator also contested the finding that the July 6 order of the Alabama court had been entered without notice and hearing. Specifically he pointed out to Respondent that the hearing was held on June 2, 1992, after which the question of custody was expressly reserved by the Alabama court. The child's mother, who was in possession of the child at that time not only had notice of that June 2nd hearing, she appeared at the hearing. Finally Relator challenged the Respondent's authority to base her denial of habeas relief upon the serious immediate question concerning the child's welfare. The gist of Relator's challenge was that the only abuse that had been alleged or that the ad litem and the stepfather had attempted to show, had allegedly occurred over four years previously and had been found by the Alabama court to be groundless. Relator asserted that under the law of Texas, that was not sufficient to show a serious immediate question about the child's welfare. Alternatively, Relator asked that Respondent at least reconsider the award of attorney's fees on the habeas matter. He alleged that only the ad litem had participated in the trial court and the court of appeals to any compensable degree and in light of the extent of services rendered by either attorney the award was excessive. The respondent denied Relator's motion to reconsider.

On September 8, 1992, the ad litem appointed by Respondent to represent the child in protective order matter, filed an Original Petition To Terminate The Parent-Child Relationship ("Petition to Terminate") between Relator and the child.[6] This petition stated that K_B_W_ resided in Texas as a result of the acts of Relator, that Relator had previously been found to be subject to Respondent's court's jurisdiction, that Texas was the child's home state on the commencement of the proceeding and the suit was necessary to protect the child because she has been subjected to "abuse or there [was] a serious and immediate question concerning the welfare of the child, as provided in Section 11.53 of the Texas Family Code." The petition alleged several statutory grounds for terminating Relator's parental rights under § 15.02(1)(B) through (F).[7] The petition requested that Respondent terminate Relator's parental rights and stated that "[appointment] of TA LISA CASSEL *as Permanent Sole Managing Conservator* is in the best interest of the child." The affidavit of the ad litem attached to the petition asked the court to take judicial notice of its other proceedings pertaining to these parties and to take judicial notice of Case No. DR–83–770, the divorce and custody proceedings pending in the Family Court of Houston County, Alabama.

In response to the ad litem's petition, Relator filed a pro se Motion to Dismiss and Application for Court Appointed Attorney in which he alleged that Respondent's Court had no jurisdiction over him or his child and that litigation was currently pending in Alabama and that Alabama had not relinquished jurisdiction over K_B_W_. He then moved the Respondent to dismiss the termination proceeding for want of jurisdiction and requested that in the event the motion to dismiss was denied, he be appointed counsel due to his indigency. Thereafter, on October 28, 1992, Relator,

---

6. The petition was erroneously filed under TEX.FAMILY CODE ANN. § 15.023 which provides for the involuntary termination of the rights of an alleged or probable father.

7. The allegations included: (1) voluntarily leaving the child alone or in the possession of a nonparent without expressing an intent to return or providing support for three months; (2) leaving the child alone or in the possession of another without providing adequate support of the child and remaining away for a period of at least six months; (3) and (4) knowingly subjecting the child to persons and conditions or surroundings that endangered the child's physical or emotional well-being, and (5) failing to support the child in accordance with his ability during a period of one year ending within six months of the filing of the petition.

with the aid of counsel, filed an Amended Special Appearance Pursuant to Rule 120a To Present Motion Objecting to Jurisdiction. Therein, Relator alleged that personal jurisdiction was essential in a termination proceeding and that Respondent had no personal jurisdiction over Relator since he does not and did not: (1) reside in Texas, (2) maintain a registered agent in Texas (3) own property in Texas, or (4) commit a tort in Texas. Furthermore, he stated that in each of the proceedings involved, he had entered only a special appearance in Texas.

On October 30, 1992, Relator filed an Additional Motion to Dismiss Subject to the Court's Ruling on the Special Appearance. In that Additional Motion, Relator argued that Alabama was currently exercising jurisdiction over the child; thus, Respondent's court was not entitled to exercise its jurisdiction under § 11.56(a) except on a "short term, temporary, emergency basis." The Additional Motion also stated that Respondent had before her, "verified copies of pleadings, orders, and the docket sheets" of the Alabama court which demonstrated that Alabama was currently exercising jurisdiction over the child.

On November 18, 1992, Respondent heard arguments on Relator's Amended Special Appearance, and motions to dismiss, and thereafter, on November 24, 1992, signed an order denying both the special appearance and the motions to dismiss. In three separate mandamus proceedings, Relator now seeks relief from the trial court's exercise of jurisdiction by way of her: (1) protective order of July 2, 1992, (2) denial of Relator's second application for writ of habeas corpus, and (3) refusal to dismiss the ad litem's Petition to Terminate Relator's parental rights.

THE PROTECTIVE ORDER OF JULY 2, 1992

CAUSE NO. 12–92–00401–CV

■ Mandamus is an extraordinary remedy, and it will lie only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no adequate remedy at law. *Walker v. Packer*, 827 S.W.2d 833, 841 (Tex.1992, orig. proceeding); *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). Relator argues that he is entitled to mandamus relief in the instant case because Respondent's protective order was void, and where an order is void, mandamus is available regardless of an adequate remedy at law. In support of this proposition Relator cites *Dikeman v. Snell*, 490 S.W.2d 183, 186 (Tex.1973). Even if we were to apply the holding in *Dikeman* to the instant case,[8] we find untenable Relator's argument that Respondent's protective order is void. Relator argues that the protective order is void because Respondent entered an order that exceeded her jurisdiction under the PARENTAL KIDNAPPING PREVENTION ACT 28 U.S.C. § 1738A(f)(2) (West Pamph. Supp.1992) (hereinafter "PKPA"). In support of this argument, Relator avers that since he filed pleadings in Alabama pertaining to his visitation with K_B_W_ while Alabama was still the child's home state, Alabama was still exercising its jurisdiction over the child at the time the application for protective order was filed in Smith County, Texas. Thus, under the PKPA Texas had only concurrent jurisdiction over the child, K_B_W_, and Respondent could only have made a determination affecting custody of K_B_W_ if the Alabama court no longer had jurisdiction, or it had declined to exercise its jurisdiction over the child. Consequently, he argues, the only type of order Respondent had jurisdiction to enter was an order "on a short term, temporary, emergency basis." *Citing Garza v. Harney*, 726 S.W.2d 198, 203 (Tex.App.—Amarillo 1987, no writ). Relator argues that Respondent's protective order exceeds the scope of her jurisdiction and is therefore void.

We disagree with Relator's arguments. Under the PKPA § 1738A(c)(2)(C) and Chapter 71 of the TEXAS FAMILY CODE, Respondent had jurisdiction to enter a protective order on behalf of K_B_W_. Sections 1738A(a) and (c)(2)(C) provide:

---

**8.** *Dikeman* dealt with a nunc pro tunc judgment which "proclaimed its voidness upon its face" because it attempted to correct judicial rather than clerical error.

(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

. . . . .

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(2) one of the following conditions is met:

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) *it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;* (emphasis added)

Since the only evidence introduced at the hearing on the application for protective order, was that introduced by the step-father, Respondent may well have been justified in believing that an emergency as described in § 1738A(c)(2)(C)(ii) existed.[9]

Moreover, Chapter 71 of the TEX. FAMILY CODE neither imposed a duty on Cassel to attach to his wife's Alabama divorce decree and other custody documentation to his application for protective order, nor imposed upon Respondent a duty to review the Alabama proceedings as a prerequisite to entering a protective order for a duration of time up to one year. Moreover, the first volume of the statement of facts from the July 1, 1992, hearing on the application for protective order contains a paraphrased version of Respondent's telephone conference with the Alabama Family Court in which Respondent deduced that the Alabama Court "[would] just really like for me [Respondent] to come to some solution in

this." Thus, Respondent's protective order was not void.

The remainder of Relator's complaints regarding the protective order concern the nature and quality of the proof before Respondent at the time she entered the protective order. Relator was given notice of the hearing, and entered a special appearance. After the denial of his special appearance, Relator could have refuted Cassel's evidence and introduced evidence of the res judicata nature of Cassel's claims, etc. without waiving the right to appeal the denial of his special appearance. *See N.H. Helicopters, Inc. v. Brown,* 841 S.W.2d 424, 425 (Tex.App.—Dallas 1992, orig. proceeding). Instead, Relator introduced no evidence, but departed from the hearing after his special appearance was denied. Because Relator had an adequate remedy by appeal on these issues, we decline to address them. Relator's petition for writ of mandamus in cause number 12–92–00401–CV is denied.[10]

### THE ORDER DENYING THE APPLICATION FOR WRIT OF HABEAS CORPUS

#### CAUSE NO. 12–92–00400–CV

■ In this mandamus proceeding, Relator argues that he is entitled to mandamus relief from Respondent's Order on Application for Writ of Habeas Corpus ("Habeas Order") entered on October 16, 1992. Because the denial of an application for writ of habeas corpus is not reviewable by appeal, Relator's mandamus action is appropriately before this Court. *Saucier v. Pena,* 559 S.W.2d 654 (Tex.1977); *Huffstutlar v. Koons,* 789 S.W.2d 707, 710 (Tex. App.—Dallas 1990, orig. proceeding). In the Habeas Order, Respondent found that: (1) the period of possession sought to be enforced ended on August 19, 1992; therefore, Relator was not presently entitled to possession of the child pursuant to any

---

9. The statement of facts from the hearing on the application for protective order was not included in the record before us. However, both parties concede that Relator did not stay for the hearing following the denial of his special appearance.

10. We think it noteworthy that on June 8, 1993, the Court of Civil Appeals of Alabama issued an opinion consistent with our finding that the trial court had authority to enter the July 2, 1992, protective order under § 1738A(c)(2)(C) of the PKPA. Relator has represented to this Court that he will seek a rehearing of that case.

court order and the application was moot; (2) the July 6, 1992 order awarding temporary custody of the child to Relator was entered without notice and opportunity to be heard, and consequently, it was not enforceable; (3) there was a serious immediate question concerning the welfare of the child if the child were placed in the unsupervised possession of Relator because of evidence that K_B_W_ had been the victim of sexual abuse "perpetrated by [Relator]."

Relator attacks each of the above-enumerated findings in the Habeas Order. While we agree with Relator's arguments concerning the first and second findings [11], we cannot say that Respondent abused her discretion by denying Relator's Application on finding number three. The third finding alleged that there was evidence to show that K_B_W_ had been the victim of sexual abuse perpetrated by Relator.

Citing § 14.10(a), which governs habeas corpus proceedings under the TEXAS FAMILY CODE, Relator argues that the presentation of the Alabama Court's Orders of June 24, and July 6, 1992, entitled him to automatic and immediate possession of his daughter. We disagree. In addition to subsection (a) relied upon by Relator, subsection (d) of § 14.10 provides: "Notwithstanding any other provision of this section, the court may issue any appropriate temporary order if there is a *serious immediate question concerning the welfare of the child.*" Also see *M.R.J. v. Vick*, 753 S.W.2d 526 (Tex.App.—Fort Worth 1988, orig. proceeding). Here, the record before us does not contain the statement of facts from the habeas corpus hearing. Consequently, we

do not know what evidence was introduced that caused Respondent to make the finding of a "serious immediate question." However, the record does reveal that there was a valid protective order in force at the time of the habeas corpus hearing. Since we have no record of the habeas corpus proceedings, we cannot say that Respondent abused her discretion in denying the application on grounds that there was a serious immediate question concerning the welfare of K_B_W_ because of evidence showing that she had been the victim of sexual abuse perpetrated by Relator.[12] Relator's petition for mandamus relief in cause no. 12–92–00400–CV as it relates to the denial of the application for writ of habeas corpus is denied.

*The Attorney's Fees Award to Bryan Johnston:*

■ As a secondary issue, Relator challenges Respondent's $2,000 attorney's fees award to Bryan Johnston. At the hearing on this mandamus proceeding, Johnston stated that he represented Cassel only and did not participate in the habeas corpus proceedings at the trial court level or at the mandamus proceeding in this court in cause no. 12–92–00308–CV.[13] Moreover, in the instant mandamus proceeding, Johnston has filed no response to Relator's challenge to the $2,000 attorney's fee award ordered by Respondent on October 16, 1992.

There being no evidence of work performed in relation to this habeas corpus proceeding, we find that Respondent abused her discretion in awarding $2,000 in attorney's fees to Johnston.

**11.** In attacking the trial court's second finding, Relator correctly points out that the June 24th and July 6th orders were entered based on the Alabama Court's June 2nd hearing at which both parents of K_B_W_ were present. Indeed, both of these orders refer to that hearing, and previous orders issued by the court in conjunction with that hearing expressly state that the issues of visitation and custody addressed at that hearing were reserved by the court. Subsequently, the court did issue orders pertaining to those two remaining issues. These orders having stemmed from the Alabama court's hearing of June 2, 1992, the due process requirements of the UCCJA were satisfied.

**12.** In the unverified response to Relator's mandamus petition, the ad litem states that a Patricia McNee testified to Relator's abuse of K_B_W_ and the likelihood of further abuse; however, since we have no statement of facts before us, and the witness' qualifications have not been set forth, we have not relied upon this unsworn representation as support for Respondent's third finding.

**13.** In this proceeding, this Court conditionally granted Relator White's petition for writ of mandamus and ordered Respondent Blake to rule on White's application for writ of habeas corpus.

RESPONDENT'S DENIAL OF RELATOR'S AMENDED SPECIAL APPEARANCE AND MOTION TO DISMISS THE APPLICATION TO TERMINATE PARENTAL RIGHTS CAUSE No. 12–92–00386–CV

On September 8, 1992, K_B_W_'s ad litem filed an Original Petition To Terminate The Parent–Child Relationship ("Petition to Terminate"). Relator responded by filing an Amended Special Appearance Pursuant to Rule 120a To Present Motion Objecting to Jurisdiction ("Special Appearance") and an Additional Motion to Dismiss Subject to the Court's Ruling on the Special Appearance ("Motion to Dismiss"). Thereafter, on November 18, 1992, Respondent held a hearing on Relator's Special Appearance and Motion to Dismiss, and on November 24, 1992, she signed an order denying both motions. It is from this order that Relator seeks mandamus relief.

*Inadequate Remedy by Appeal:*

Because of the availability of an adequate remedy by appeal, mandamus is sometimes not available to address the denial of preliminary motions, e.g. special appearances, motions to transfer venue; however, in cases involving child support and custody issues, this general rule has been relaxed. *See Proffer v. Yates*, 734 S.W.2d 671, 673 (Tex.1987, orig. proceeding) holding that denial of motion to transfer venue in child custody case was reviewable by mandamus proceeding because appeal was frequently inadequate to protect the rights of parents and children to a trial in a particular venue; *Hutchings v. Biery*, 723 S.W.2d 347 (Tex.App.—San Antonio 1987, orig. proceeding) holding that the Court of Appeals has power to issue a writ of mandamus in an enforcement of visitation rights case where the trial court has over-ruled Relator's special appearance. Given the tenor of these cases, and the inadequacy of appeal as a remedy in the instant case, we will address the denial of Relator's Special Appearance and Motion to Dismiss.

*Characterization of the Suit to Terminate Parental Rights*

■ Relator's complaints in this mandamus proceeding hinge on Respondent's alleged non-compliance with the provisions of the UCCJA. Therefore, to analyze these complaints, we must first determine whether a suit to terminate the parent-child relationship ("termination suit") is included within the definition of either a "custody determination" or "custody proceeding" as defined in § 11.52(2) or (3) of the UCCJA. These subsections provide:

(2) "Custody [14] determination" means a court decision and court orders and instructions providing for the custody of a child, including visitation rights, but does not include a decision relating to child support or any other monetary obligation of any person.

(3) "Custody proceeding" includes a proceeding in which a custody determination is one of several issues, such as an action for divorce or separation, and includes child neglect and dependency proceedings.

While termination suits are not specifically enumerated in the above definitions, we find that they are implicitly included within them. First, there can be no doubt that the custody rights of a parent are affected by the termination of his or her parental rights, since these rights are severed completely and permanently. Moreover, child neglect can be the basis for involuntarily

14. For purposes of the UCCJA, the term "custody" means the "managing conservatorship of a child." TEX.FAMILY CODE ANN. § 11.52(10) (Vernon Supp.1993). The term "managing conservator" when applied to a parent is defined in the FAMILY CODE to include the following rights and responsibilities over a child:

§ 14.02
(a) Except as provided in Subsection (d) of this section, a parent appointed as sole managing conservator of the child retains all the rights, privileges, duties, and powers of a parent to the exclusion of the other parent, subject to the rights, privileges, duties, and powers of a possessory conservator as provided in Section 14.04 of this code and to any limitations imposed by court order in allowing access to the child.
(d) The appointment of a managing conservator does not create, rescind, or otherwise alter a right to inherit as established by law or as modified under Chapter 15 of this Code.
TEX.FAMILY CODE ANN., § 14.02 (Vernon Supp. 1993).

terminating parental rights under Texas law.[15]

The issue of whether a termination suit is a child custody case has been addressed by only one other Texas appellate court. In *Williams v. Knott*, 690 S.W.2d 605 (Tex. App.—Austin 1985, no writ), the Austin Court of Appeals was presented with facts almost identical to those at issue here. A mother was seeking to terminate the parental rights of the child's father who resided in Oklahoma, so that the step-father could adopt the child. On the issue of whether the provisions of the UCCJA and PKPA controlled in a termination suit, the *Williams* court stated:

> We do not address the validity of Oklahoma's continuing jurisdiction under either subsection of the PKPA, because actions to terminate parental rights are not child custody cases. *Richardson v. Green*, 677 S.W.2d 497 (Tex.1984) ... [In *Richardson* ] the Court's opinion makes it clear that there is a difference between custody suits and termination actions. *Id.* at 500.

As Relator points out, several out-of-state appellate courts have declined to follow this portion of the holding in the *Williams* opinion. *See Fosters v. Stein*, 183 Mich. App. 424, 454 N.W.2d 244 (1990); *Gainey v. Olivo*, 258 Ga. 640, 373 S.E.2d 4, 5–6 (1988); *Souza v. Superior Court*, 193 Cal. App. 3rd 1304, 1309–10, 238 Cal.Rptr. 892 (1987), and for the reasons stated below, we likewise decline to follow it.

While we agree with *Williams* that *Richardson* distinguishes child custody suits from termination suits, we do not find that these distinctions remove termination suits from the scope of § 11.51 et seq. (hereinafter sometimes "UCCJA") and the PKPA. Unlike *Williams* and the instant case, the issue before the *Richardson* court was whether the Texas Supreme Court had authority to review an appellate court decision in a termination of parental rights case, since under TEX.REV.CIV.STAT.ANN. art. 1821(3),[16] judgments of the courts of appeals were final in all cases of child custody, support or reciprocal support. In finding that it did have jurisdiction to review termination of parental rights cases, the *Richardson* court reasoned that termination cases determine more than the right to physical possession of the child, they permanently sever the natural rights that exist between a parent and a child. The court further noted that the burden of proof was greater in a termination suit than in a child custody case, and that the added safeguards accompanying a termination suit were justified because of the gravity of the decision involved. *Id.* 677 S.W.2d at 500. Lastly, the *Richardson* court noted that termination suits and custody suits were found under separate chapters of the TEXAS FAMILY CODE, and that in drafting article 1821(3), if the legislature had wanted to include termination suits, it would have done so instead of only referring to "child custody, support or reciprocal support." *Id.*, at 500.

These distinctions do not remove termination suits from the scope of the UCCJA. In *Richardson*, the court distinguished termination and child custody proceedings to demonstrate why termination suits should not be classified as custody cases for purposes of eligibility for Supreme Court review. By enumerating these differences, the Supreme Court explained why prohibition of Supreme Court review of termination suits was not contemplated by art. 1821(3). In the instant case, the underlying purposes of the UCCJA would be furthered by construing the definition of "custody proceedings" to include termination suits. Section § 11.51(a) of the UCCJA lists the following purposes:

> (1) avoid jurisdictional competition and conflict with courts of other states in matters of child custody that have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;
>
> (2) promote cooperation with the courts of other states to the end that a custody decree is rendered in the state that

---

**15.** See TEX.FAM.CODE ANN. § 15.02.

**16.** Repealed by Acts 1985, 69th Leg., ch. 480, § 26(1), eff. Sept. 1, 1985.

can best decide the case in the interest of the child;

(3) assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

(4) discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(5) deter abductions and other unilateral removal of children undertaken to obtain custody awards; [17]

(6) avoid relitigation of custody decisions of other states in this state insofar as feasible;

(7) facilitate the enforcement of child custody decrees of other states;

(8) promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

(9) make uniform the law of those states that enact it.

Section 11.51(b), which follows these nine purposes, states: "This subchapter *shall be construed to promote* the general purposes stated in this section." (emphasis added). The "Historical and Statutory Notes" of the PKPA set forth similar purposes.

Lastly in construing "custody proceedings" as determined in the OCCJA to include termination suits, we note that the language used in the ad litem's Petition to Terminate, is couched in UCCJA terminology. In the Petition to Terminate, the ad litem seeks "[appointment] of Ta Lisa Cassel as *Permanent Sole Managing Conser-*

vator." Furthermore, the ad litem avers that Texas is the child's "home state" and "it is necessary to protect the child because ... there is a serious and immediate question concerning the welfare of the child, as provided in Section 11.53 of the Texas Family Code." Finally, as grounds for termination of Relator's parental rights, the ad litem alleges several grounds of child neglect, and asks the trial court to take judicial notice of the documents filed in the Alabama proceeding.

Given the general purposes of the UCCJA, and the mandate of § 11.51(b) that we construe the UCCJA to promote those purposes, we find that a suit to terminate parental rights includes as an element, a "custody determination," and may include "child neglect proceedings" and is, therefore, a "custody proceeding" as defined in § 11.52 of the UCCJA. Thus, the termination suit filed by the ad litem was subject to the provisions of the UCCJA.

*The Special Appearance:*

■■ By his Special Appearance, Relator sought the dismissal of the ad litem's Petition to Terminate on grounds that the trial court had no personal jurisdiction over him. Citing *Richard v. Green,* 677 S.W.2d 497, 500 (Tex.1984), Relator argued that a termination suit was more than a mere custody determination because it could "terminate forever the natural right which exists between parents and their children"; and thus, personal jurisdiction was required.

For the reasons enumerated above, we have found that an action to terminate parental rights is in the nature of a "custody proceeding" as defined by § 11.52(3). The Texas Supreme Court has recently addressed the issue of personal jurisdiction in the custody dispute context. In *In the Interest of S.A.V.,* 837 S.W.2d 80, 84 (Tex. 1992), that court stated that:

> Unlike adjudications of child support and visitation expense, custody determinations are status adjudications not dependent upon personal jurisdiction over the

---

**17.** In the ad litem's Petition to Terminate, he stated that K_B_W_ resided in Texas as a result of the acts of Relator.

parents ... Generally, a family relationship is among those matters in which the forum state has such a strong interest that its courts may reasonably make an adjudication affecting that relationship even though one of the parties to the relationship may have had no personal contacts with the forum state ... The Texas legislature recognized the state's strong interest in determining the custody of children by adopting the Uniform Child Custody Jurisdiction Act (UCCJA) TEX.FAM.CODE ANN. § 11.51 et seq. (Vernon 1992) ... To acquire jurisdiction over custody issues, no connection between the nonresident parent and the state is required ... If the requirements of the Family Code are satisfied, the state's interest in determining custody has been demonstrated.

*Id.* 837 S.W.2d at 84.

*In the Interest of S.A.V.* further provides that once the state's sovereign interest in and responsibility for the child's welfare is established, this interest outweighs the non-resident parent's interest in avoiding an inconvenient forum. *Id.*, 837 S.W.2d at 84. Given the state's strong interest in "custody determinations" since they affect the family relationship, it stands with greater reason that the state would have a strong interest in a termination suit since such a proceeding may not only affect but may destroy a family relationship. Likewise, it follows that if the state can make adjudications without personal jurisdiction over the non-resident parent in "custody determinations" where it has a strong state interest, it also has that right in termination suits where it has an even stronger interest. *See In The Interest of M.S.B.*, 611 S.W.2d 704 (Tex.Civ.App.—San Antonio 1981, no writ). For these reasons, personal jurisdiction over Relator was not required. Thus, although the trial court may have erred in overruling Relator's Amended Special Appearance, any error was harmless since no personal jurisdiction over Relator was required.

*The Motion to Dismiss:*

■ In his Motion to Dismiss, Relator argued that Alabama was currently exercising jurisdiction· over the custody of K_B_W_, and that under § 11.56(a), Respondent was not authorized to entertain the Petition to Terminate because the Alabama court had neither declined to exercise jurisdiction nor deferred its jurisdiction to Texas. Relator further argued that under the PKPA § 1738A(f)(2), Respondent was authorized to act only if the Alabama Court no longer had jurisdiction or had declined to exercise such jurisdiction.

Section 11.56(a) of the UCCJA provides:

A court of this state *may not* exercise its jurisdiction under this subchapter if, at the time of filing the petition, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this subchapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

Similarly, § 1738A(g) of the PKPA provides:

A court of a State *shall not* exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.

The only evidence that the Alabama court had relinquished its· jurisdiction over the custody proceedings is contained in excerpts of the first volume of the statement of facts of the July 1, 1992 hearing on the protective order.· This volume of the statement of facts was filed in this Court by the ad litem on February 2, 1993, as a supplemental record. In that statement of facts, Respondent stated the following with regard to her conversation with the Alabama Family Court judge:

He [the Alabama judge] said he was getting a lot of heat from letter writing to the newspapers, etcetera, about the case. I feel like it was—from what he was saying, it was much of a hot potato, and he'd like to see the matter resolved in any way it could be resolved, and if that

meant doing it here, fine. Now that's what I understood the conversation from Judge Holloway to be.

These statements from Respondent do not satisfy the requirements of the UCCJA for obtaining a relinquishment of jurisdiction from Alabama. The Texas and Alabama versions of the UCCJA provide for almost identical methods by which two courts with concurrent jurisdiction can determine the most appropriate forum for entertaining the custody suit. *See Tex. Family Code Ann. §§ 11.56 & 11.57 and Alabama Code, §§ 30-3-26 and 30-3-27 (1992).* Moreover, following Respondent's July 1, 1992 statements of record concerning her conference with Judge Holloway, Judge Holloway entered at least two more orders regarding visitation and custody of K_B_W_ thereby demonstrating his intent to retain jurisdiction over the custody proceeding.

As further evidence of Alabama's intent to exercise continued jurisdiction over the custody proceedings, on July 2, 1993, Relator filed with this court a supplemental record containing an order signed by Judge Holloway of the Family Court of Houston County, Alabama, which states in relevant part that:

> Any and all proceedings filed in the State of Texas were filed and thereby "commenced" during the pendency of the Alabama proceeding; Texas's purported exercise of jurisdiction over K_B_W_, clearly violates federal law and constitutional provisions. Therefore, any and all proceedings regarding said minor, K_B_W_, in the State of Texas are null and void and of no effect in this Court. Any order concerning said minor is not entitled to full faith and credit or consideration by this Court.

This order unequivocally indicates an intent on the part of the State of Alabama to retain jurisdiction over the custody proceedings concerning K_B_W_.

While Respondent did not have the benefit of the Alabama court's order at the time she denied Relator's Motion to Dismiss, she abused her discretion in failing to inquire into and resolve the forum issue as mandated by the PKPA and UCCJA. Having found that the Alabama Court's orders were issued in "substantial conformity" with the UCCJA, Respondent had no authority to entertain the ad litem's termination proceeding absent a relinquishment of jurisdiction from the Alabama court. As was stated by the court in *Cunningham v. Cunningham*, 719 S.W.2d 224, 228 (Tex. App.—Dallas 1986, pet. dism'd):

> Under section 11.56, the only issue that the Texas court could have determined when shown that there was a prior custody proceeding in another state was whether that state was exercising "jurisdiction substantially in conformity with this subchapter [the UCCJA]." Section 11.56 ... When a sister state is already exercising jurisdiction in conformity with the UCCJA at the time of filing in Texas, the only power that the trial court has is to dismiss.

*Cunningham*, at p. 228.

A resolution of the jurisdictional issue via the channels provided by the UCCJA before assuming jurisdiction over the termination proceeding would have circumvented both the delay in the issuance of the Alabama Court's June 30th order and this mandamus proceeding.

### DISPOSITION OF EACH MANDAMUS PROCEEDING

In cause number 12–92–00401–CV, Relator's petition for writ of mandamus is denied. In cause number 12–92–00400–CV Relator's petition for writ of mandamus is denied as to Respondent's failure to grant Relator's application for habeas corpus and conditionally granted as to Respondent's award of attorney's fees to one Bryan Johnston. In cause number 12–92–00386–CV, Relator's petition for writ of mandamus is conditionally granted.

We are confident that within thirty (30) days from the date of this opinion, Judge Blake will vacate her award of attorney's fees to Bryan Johnston in cause number 12–92–00400–CV and will vacate her order overruling Relator's Motion to Dismiss and enter an order granting same in cause number 12–92–00386–CV. A writ of man-

damus will issue in each of these causes only in the event she fails to do so.