OPINION


No. 04-03-00211-CV


IN RE Keith Palmer PENSOM, Jr.

Original Mandamus Proceeding (1)


Opinion by: Sandee Bryan Marion, Justice

 

Sitting: Alma L. López, Chief Justice

 Catherine Stone, Justice

 Sandee Bryan Marion, Justice


Delivered and Filed: November 5, 2003


PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED


 Relator is the father of two young boys. The real party in interest, Maria Weaver, is the
boys' maternal grandmother. Relator and his wife, Melanie, were named joint managing
conservators following their divorce, and the boys lived with Melanie. During Melanie's illness,
she and the children lived with Maria and Maria's husband, James, for about six years at the
Weaver's home in San Antonio. After Melanie died, Maria and James (the step-grandfather), filed
an Original Petition in Suit Affecting the Parent-Child Relationship, in which the Weavers asked
to be appointed temporary sole managing conservators. Alternatively, the Weavers asked that they
be appointed joint managing conservators or granted reasonable access to the children. The court
entered temporary orders, that included, among other orders, that Maria be granted access to the
children. Relator filed this mandamus proceeding on two issues: (1) under Troxel v. Granville, 530
U.S. 57, 120 S. Ct. 2054 (2000), Family Code section 153.433 (2) (the "Grandparent Access Statute")
is unconstitutional and (2) even if the statute is constitutional, there must be a finding that he is an
unfit parent and the trial court abused its discretion in granting Maria access because it did not find
him to be an unfit parent.

CONSTITUTIONALITY OF STATUTE

 We interpret relator's challenge to the Grandparent Access Statute as an assertion that it is
unconstitutional on its face. A facial invalidation of a statute is appropriate if it can be shown that
under no circumstances can the statute be constitutionally applied. United States v. Salerno, 481
U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987). We conclude the Grandparent Access Statute can be
constitutionally applied when the constitutional principles announced in Troxel are considered.

 The United States Supreme Court has recognized that the interest of parents in the care,
custody, and control of their children "is perhaps the oldest of the fundamental liberty interests."
Troxel, 530 U.S. at 65, 120 S. Ct. at 2060. Similarly, Texas has long recognized that the natural
right existing between parents and their children is of constitutional dimensions. See Wiley v.
Spratlan, 543 S.W.2d 349, 352 (Tex. 1976); Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985); Tex.
Hum. Res. Code Ann. § 40.002(b)(2) (Vernon 2001). These parental interests are a fundamental
right protected by the Due Process Clause of the Fourteenth Amendment to the United States
Constitution. Troxel, 530 U.S. at 65, 120 S. Ct. at 2060. 

 Encompassed within the well-established fundamental right of parents to raise their children
is the right to determine with whom their children should associate. See Troxel, 530 U.S. at 79, 120
S. Ct. at 2067 (Souter, J., concurring). The Grandparent Access Statute provides a mechanism by
which the State may intervene in the basic exercise of this parental right because it allows courts
to determine whether parents will be required to turn their children over to the grandparents against
the parents' wishes. The power of a trial court to adjudicate such disputes and to enforce its own
orders constitutes state involvement in a way that clearly implicates parents' fundamental liberty
interests in the care and custody of their children. Because a fundamental right is implicated here,
we apply strict scrutiny and will uphold the statute if it is narrowly tailored to serve a compelling
government interest. See Troxel, 530 U.S. at 80, 120 S. Ct. at 2068 (Thomas, J., concurring) (noting
that strict scrutiny is the appropriate standard for reviewing the infringement of fundamental rights
such as parental right to direct child's upbringing).

 Neither party here and no Texas court that has considered the Grandparent Access Statute
has articulated the compelling government interest served by the statute. The statute itself speaks
in terms of the child's best interest. See Tex. Fam. Code Ann. § 153.433(2). And, we acknowledge
the State has an interest in the family relationship in general. In the Int. of J.W.T., 872 S.W.2d 189,
197 (Tex. 1994) (recognizing "legitimate interest in minimizing familial disruptions that are
harmful" to a child); In the Int. of S.A.V., 837 S.W.2d 80, 84 (Tex. 1992) ("A family relationship
is among those matters in which the forum state has . . . a strong interest . . . ."); White v. Blake, 859
S.W.2d 551, 564 (Tex. App.--Tyler 1993, no writ) (recognizing State's sovereign interest in and
responsibility for a child's welfare). Also, there is no question that the State may intrude upon a
family's integrity in the face of allegations that parents are unfit. Parham v. J.R., 442 U.S. 584, 603,
99 S. Ct. 2493, 2504 (1979); see also Tex. Fam. Code Ann. §§ 153.131, 161.001 et seq. (Vernon
2002). 

 The Grandparent Access Statute allows grandparents to petition for access only under
circumstances where the family unit has already, to some degree, been disrupted. A grandparent
may request access if the parent is incarcerated, incompetent, or dead; the parents are divorced or
living apart; the child is a delinquent or has been abused by its parents; the parent-child relationship
has been terminated with one parent; or the child has resided with the grandparents for a statutorily-required length of time. See Tex. Fam. Code Ann. § 153.433(2)(A)-(F). These provisions evidence
the Legislature's recognition that cessation of contact with a grandparent may have a dramatic, and
even traumatic, effect upon the child's well-being. Under such circumstances the State has a
compelling interest in providing a forum for those grandparents having a significant existing
relationship with their grandchildren. (3)

 We therefore consider what parameters would be consistent with the constitutional interest
at stake and our Legislature's intent to limit a court's jurisdiction over non-parental intrusion into
the parent-child relationship. Because the statute allows only grandparents to petition for access,
the jurisdictional prerequisite of standing serves to ensure that the statutory scheme is narrowly
tailored so that a parent's personal affairs are not needlessly intruded upon or interrupted by the
trauma of litigation by any third party seeking access. (4) However, more than a narrow standing
requirement is necessary to satisfy the due process concerns raised in Troxel. In acknowledging the
changing realities of American families, the Troxel Court refused to define the precise scope of the
parental due process right in the access context, stating "the constitutionality of any standard for
awarding visitation turns on the specific manner in which that standard is applied and . . . the
constitutional protections in this area are best 'elaborated with care.'" Troxel, 530 U.S. at 73, 120
S. Ct. at 2064. The Court did not issue a per se holding that non-parental visitation statutes violate
the Due Process Clause. Id. The underlying logic of abstaining from such a decision was that states,
in ruling on the constitutionality of their own non-parental visitation statutes, have made these
determinations in the past on a case-by-case basis as the outcome often depends on the application
of those statutes. Id. Accordingly, the Grandparent Access Statute is constitutional if its application
protects parents' fundamental rights under the Due Process Clause. To achieve that goal, we
construe the Grandparent Access Statute narrowly and in a manner consistent with the constitutional
principles stated in Troxel.

 As Troxel makes clear, the trial court must accord significant weight to a fit parent's
decision about the third parties with whom his or her child should associate. Accordingly, we hold
that in order to satisfy the "best interest of the child" prong of the Grandparent Access Statute, a
grandparent must overcome the presumption that a fit parent acts in the best interest of his or her
child. To overcome this presumption, a grandparent has the burden to prove, by a preponderance
of the evidence, either that the parent is not fit, (5) or that denial of access by the grandparent would
significantly impair the child's physical health or emotional well-being. Our holding that
grandparents meet this burden is consistent with other provisions of the Family Code that require
a higher degree of proof when a non-parent files a Suit Affecting the Parent-Child Relationship. (6)
When interpreted and applied in light of the framework established in Troxel, the Grandparent
Access Statute is narrowly drawn to serve a compelling state interest and therefore is facially
constitutional.

FITNESS FINDING

 Relator asserts that, if the statute is constitutional, there must be a finding that he is unfit
before access is granted to Maria. We agree in part. For the reasons stated above, a constitutional
application of the Grandparent Access Statute requires the trial court to find either that relator is not
fit, or that denial of access by the grandparent would significantly impair the child's physical health
or emotional well-being. Here, the trial court did not make any such findings because, in granting
access, it did not have the benefit of this court's guidance on applying the statute in light of Troxel.
Accordingly, the trial court's order must be set aside. (7)


CONCLUSION

 It is regrettable when the personal animosity of one or all of the parties serves only to deprive
children of a relationship with their grandparents. It is even more regrettable here where the
grandmother serves as an emotional link between the children and their recently deceased mother.
However, for the reasons stated above, we conditionally grant the writ. Tex. R. App. P. 52.8(c). The
Honorable Pat Boone is ORDERED to vacate his Temporary Orders in Suit Affecting the Parent-child Relationship signed on February 14, 2003. If he does not do so within ten days of this order,
we will issue the writ. 

 

 Sandee Bryan Marion, Justice

1. This proceeding arises out of Cause No. 2002-CI-15341, styled In the Interest of Chase Palmer Pensom and
Hunter Ross Pensom, Minor Children, filed in the 73rd Judicial District Court, Bexar County, Texas. However, the
Honorable Pat Boone, presiding judge of the 57th Judicial District Court, Bexar County, Texas, conducted the hearings
and ruled on the motion that is the subject of this proceeding.
2. The Grandparent Access Statute allows grandparents access to their grandchildren under certain circumstances,
including as follows:

(1) at the time the relief is requested, at least one biological or adoptive parent of the child has not had
that parent's parental rights terminated; and

(2) access is in the best interest of the child, and at least one of the following facts is present:

 ***

 (B) the parents of the child are divorced or have been living apart for the three-month period
preceding the filing of the petition or a suit for the dissolution of the parents' marriage is pending; . .
. or


 ***

 (F) the child has resided with the grandparent requesting access to the child for at least six
months within the 24-month period preceding the filing of the petition.

 

Tex. Fam. Code. Ann. § 153.433 (Vernon 2002).
3. The United States Supreme Court has recognized that "the importance of the familial relationship, to the
individuals involved and to the society, stems from the emotional attachments that derive from the intimacy of daily
association, and from the role it plays in 'promot[ing] a way of life' through the instruction of children as well as from
the fact of blood relationship." Smith v. Organization of Foster Families for Equality and Reform, 431 U.S. 816, 845,
97 S. Ct. 2095, 2109 (1977) (citations omitted).
4. Unlike the Washington statute in Troxel, the Grandparent Access Statute is not "breathtakingly broad." The
Washington statute provided as follows: "Any person may petition the court for visitation rights at any time including,
but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve
the best interest of the child whether or not there has been any change in circumstances."
5. The Troxel Court describes a fit parent as one who "adequately cares" for his or her children. 530 U.S. at 68,
120 S. Ct. at 2061.
6. See Tex. Fam. Code Ann. § 102.004(a)(1) (grandparent may file suit requesting managing conservatorship
if "child's present environment presents a serious question concerning the child's physical health or welfare"); Id. at
§ 102.004(b) (Vernon 2002) (court may grant grandparent leave to intervene in pending suit if grandparent has "had
substantial past contact with child"); Id.at § 153.131(a) (parent shall be appointed managing conservator unless
appointment "would significantly impair the child's physical health or emotional development"); Id. at § 156.102(b)(1)
(modification of right to determine child's primary residence requires consideration of whether present environment may
endanger child's physical health or significantly impair child's emotional development); Id. at § 157.374 (court may render
appropriate temporary order if there is a serious immediate question concerning the child's welfare); Id. at
§ 160.608(b)(6), (9) (disruption of relationship and chance of harm to child considered when court is deciding whether
to deny motion for order for genetic testing); Id. at § 161.001(1) (harm to child's physical or emotional well-being
considered when court is deciding whether to terminate parent-child relationship); Id. at § 263.307 (harm to child
considered when determining whether child should be placed with Department of Protective and Regulatory Services).
7. Our resolution of this petition for writ of mandamus should not be interpreted as precluding the trial court from
reconsidering Maria's petition for access and granting Maria reasonable access if, after an evidentiary hearing, the trial
court makes the requisite finding consistent with this opinion.