**STATE of Wyoming, ex rel., John Scott GRIFFIN, Petitioner,**

v.

**DISTRICT COURT OF THE FIFTH DISTRICT and Judge Gary P. Hartman, Judge of the Fifth Judicial District, Washakie County, Wyoming, Respondent.**

No. 91–272.

Supreme Court of Wyoming.

May 4, 1992.

Thomas C. Bancroft, Worland, for petitioner.

Joseph B. Meyer, Atty. Gen., Richard E. Dixon, Asst. Atty. Gen., for respondent.

Kent Richins, Worland, guardian ad litem.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

URBIGKIT, Chief Justice.

Upon application of petitioner John Scott Griffin (father), this court issued an Alternative Writ of Mandamus and Prohibition on December 23, 1991. The father sought to prohibit the Wyoming district court from exercising jurisdiction in a child custody proceeding involving his one-year-old son, Spencer Bryce Griffin (child), and the boy's mother, Melissa V. Presnell (mother). The writ addressed the custody jurisdiction of the Wyoming district court as to whether it was in conflict with or alternative to a Virginia court where a proceeding for custody was also pending.

We hold that the jurisdiction provisions in the Wyoming Uniform Child Custody Jurisdiction Act (UCCJA), Wyo.Stat. § 20–5–101 through § 20–5–125 (1987), and the federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C.S. § 1738A (Law. Coop.1989), preclude Wyoming district court jurisdiction in this case where the child had been removed from Virginia by his mother unless the Virginia court relinquishes jurisdiction to the Wyoming district court.

## I. FACTS

Spencer Bryce Griffin was born in Denver, Colorado on December 21, 1990. The child's mother and father [1] had met shortly after the mother moved to Virginia in January, 1989. The father had lived in Virginia since 1976 and continues to live there at this time. After becoming pregnant, the

---

**1.** Paternity is not at issue in this case. In her Petition to Establish Paternity, Custody, Visitation and Support presented to the Wyoming district court, the mother states that "[t]here are no persons other than [John Scott Griffin] who would be presumed to be the father of [Spencer Bryce Griffin] nor is any other man alleged to be the father of said minor child." The father admitted in several documents filed by him in both the Virginia and Wyoming courts that he is the natural father of Spencer Bryce Griffin.

mother left Virginia in May, 1990 to stay with her sister in Denver, Colorado. The father joined the mother in Colorado in late December, 1990 during which time the child was born. Approximately three weeks later, the mother, father and child returned to the father's home in Virginia.

In April 1991, the father petitioned the Juvenile and Domestic Relations District Court of Fairfax County, Virginia to grant temporary custody of the minor child to the father. Prior to court decision, however, the parents filed a stipulation, which became a judicial order, providing that the father would have temporary custody until permanent custody was established. Further, the consent order stipulated that the child would reside with the father at his home in Reston, Virginia, and the mother was given the option to continue living in the father's home until a permanent custody agreement was reached. Custody Proceeding No. 1 in Virginia was then dismissed. Both parents and the child mostly, but not at all times, resided together in Virginia until September, 1991 when the mother and child came to Wyoming. Whether the mother and the child came to Wyoming for a temporary visit or a permanent stay is totally in factual dispute.

Shortly after the mother and child left Virginia, the father filed a petition dated September 19, 1991 in the Juvenile and Domestic Relations District Court of Fairfax County, Virginia seeking to determine the child's custody pursuant to Virginia's Uniform Child Custody Jurisdiction Act. (Custody Proceeding No. 2) The mother received notice of a custody hearing scheduled for December 3, 1991 in the Virginia court when she was served with process by a Washakie County, Wyoming deputy sheriff on October 28, 1991.

The chronology of events and jurisdictional issues in this case became complicated, however, because the mother had filed a petition to establish paternity, custody, visitation and support in the Fifth Judicial District Court for Washakie County, Wyoming on October 10, 1991—eighteen days before she received service of process of the Virginia custody proceeding initiated by the father. (Custody Proceeding No. 3) The mother admitted prior notice that the father "was going to file something," and thirty-six days after she came to Wyoming, the proceeding was filed in the Fifth Judicial District Court, Washakie County, Wyoming. In filing in Wyoming, the mother failed to include the requisite affidavit pursuant to Wyo.Stat. § 20–5–110 disclosing where the child had previously lived and whether or not there had been prior litigation concerning the child's custody. The father was served in Virginia with a summons and copy of the petition in the Wyoming action on October 29, 1991. The following day, the father filed a motion to dismiss the Wyoming proceeding on the basis of lack of jurisdiction. A memorandum filed in support of the father's motion advised the Wyoming district court that a custody proceeding was already pending in Virginia at the time of the mother's October 10, 1991 Wyoming filing.[2]

2. In addition to total omission of the required affidavit regarding the child's prior residency, Wyo.Stat. § 20–5–110, the mother, in prior litigation, provided only counsel assertions in the pleadings as factual support in the pending Wyoming custody proceeding until after a motion to strike was filed by the father. Those initial non-factually supported pleadings included the initial petition signed by counsel without verification, amendment to the petition signed by counsel without verification, a motion to quash service or, in the alternative, to deny jurisdiction signed by counsel without verification or supporting affidavit (apparently directed to the in-Wyoming service of process by the Virginia court), plaintiff's response to respondent's motion to dismiss and supporting memorandum signed by counsel without documents supporting assertions of fact provided in counsel's state-

ment and unverified, and amendment to plaintiff's response to respondent's motion to dismiss and supporting memorandum signed by counsel without verification and no supporting documentation.

Conversely, in support of his motion to dismiss, father included with the memorandum a copy of the Virginia custody order document and other documentation from the Virginia proceeding.

The father responded to the unsubstantiated statements in pleadings and motions with a motion to strike for lack of factual support and alleged the documents "are replete with redundant, immaterial, i[m]pertinent, and scandalous statements" and "[t]hose documents, presented apparently as memoranda of law, contain rambling factual statements by Petitioner's then-attorney which are unsupported by affidavit or

Pursuant to Wyo.Stat. § 20–5–107(c)[3] and Wyo.Stat. § 20–5–108(d),[4] Wyoming District Court Judge Gary P. Hartman contacted Virginia Family Court Judge Michael J. Valentine by telephone on December 2, 1991. Wyoming counsel for the mother, Wyoming counsel for the father, and a Wyoming court-appointed guardian ad litem attended the conference call in Judge Hartman's chambers. It appears from the record that Judge Valentine and Judge Hartman agreed that the December 3, 1991 hearing, scheduled in Virginia, would be limited to the purpose of deciding whether the father should be responsible to pay for the cost in bringing the mother and child to Virginia for custody determination. Further, Judge Valentine indicated that his court would not make a determination at the December 3, 1991 hearing as to whether Virginia should exercise jurisdiction in determining custody pursuant to the UCCJA.

Because Judge Valentine was indisposed and thus unable to conduct the December 3, 1991 Virginia hearing, Judge David S. Schell presided over the hearing attended only by Virginia counsel representing the father. Judge Schell ordered that Virginia was the proper forum to determine custody in this case and assumed jurisdiction pursuant to Virginia's UCCJA. Judge Schell awarded temporary custody of the child to the father and ordered the mother to immediately return the minor child to Virginia.

In addition, Judge Schell continued for a subsequent hearing the question of permanent custody, issued a detention order for the mother, and commanded that the child be placed in the father's custody in Virginia.

The next day, December 4, 1991, Judge Schell's order was presented to the Wyoming district court at a hearing on the father's motion to dismiss. During the hearing, Judge Hartman conducted a second telephone conference call—this time with Judge Schell—and then took the custody matter under advisement. Judge Hartman also entered an order prohibiting the child's removal from the state pending subsequent Wyoming district court proceedings. It is from that order that the father petitioned this court for a writ of mandamus or, in the alternative, a writ of certiorari.

On December 23, 1991, this court granted an alternative writ of mandamus and prohibition which directed Judge Hartman to desist from further proceedings and to show cause why he should not be absolutely restrained from exercising jurisdiction in this case as long as jurisdiction remains vested in the Virginia court. On January 6, 1992, Judge Hartman filed a response to the show cause order. This court then ordered that simultaneous briefs be submitted by the district court and the father on or before February 6, 1992.

---

otherwise. All of those statements are, therefore, inadmissible hearsay." In support of the motion to strike, two affidavits of the father dated November 8 and November 18, 1991 were filed, along with an affidavit of Diane M. Griffin dated November 18, 1991, an affidavit of Michael H. Reser dated November 18, 1991, and an affidavit of Christian S. Griffin–Owens and Donald H. Owens dated November 18, 1991. Service of the motion to strike and attached affidavits were made November 21, 1991. On November 27, 1991, succeeding counsel entered an appearance by a motion for a continuance on behalf of the mother, filed one affidavit on November 27, 1991 and a second affidavit on December 2, 1991. No documentary contest as a factual issue is raised or even allegations by pleading to contest the jurisdictional issues regarding the residency in Virginia of the mother and child between January 11, 1991 and September 4, 1991 or that the mother had only been in Wyoming thirty-six days when she initiated the Wyoming proceeding.

**3.** Wyo.Stat. § 20–5–107(c) states in part:

If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before this court assumed jurisdiction, the court shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with W.S. 20–5–120 through 20–5–123.

**4.** Wyo.Stat. § 20–5–108(d) states:

Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the most appropriate court and that a forum will be available to the parties.

One significant document found in the Virginia record in this case is a memorandum submitted by Judge Valentine on January 23, 1992. In his notation, Judge Valentine concurs with Judge Hartman's impressions as to what Judge Valentine had indicated would be decided at the December 3, 1991 Virginia hearing. Further, Judge Valentine states that he did not adequately advise Judge Schell as to the nature of his December 2, 1991 telephone conversation with Judge Hartman. From the record, it appears that Judge Schell sent the case back to Judge Valentine for further disposition, and Judge Valentine has agreed to await disposition of the proceeding in this Wyoming appellate court before taking any further action in Virginia.[5]

## II. ISSUES

The respondent raises three issues in his brief before this court:

I. Whether the petitioner herein should be granted an extraordinary writ when he has chosen to eschew a plain, adequate, and speedy remedy at law?

II. Whether the respondent improperly assumed jurisdiction of a child custody determination, or simply stayed further proceedings pending determination of proper jurisdiction?

III. Whether the Parental Kidnapping Prevention Act of 1980 deprives Virginia and Wyoming of authority to proceed in accord with provisions of the Uniform Child Custody Jurisdiction Act?

On the other hand, the father raises the following issue:

I. Did the trial court err in failing to dismiss the petition [to establish paternity, custody, visitation and support] of Melissa Presnell for lack of jurisdiction?

Because the Wyoming district court lacked jurisdiction to make a current custody determination under both the state UCCJA and the federal PKPA, we find that the father's single issue is dispositive.

## III. DISCUSSION

Wyo.Stat. § 20–5–125 provides that "[u]pon request of a party to a custody proceeding which raises a question of existence or exercise of jurisdiction under this act, the case shall be given calendar priority and handled expeditiously." Consequently, this case was assigned to this court's expedited docket for prompt disposition.

▮▮▮ A fundamental purpose of both the UCCJA and the PKPA is to avoid conflict and promote cooperation. Other underlying purposes include the elimination of forum shopping, to enable courts to act in the best interests of children, and to deter interstate abductions and other unilateral removals of children undertaken for purposes of obtaining custody. Parental Kidnapping Prevention Act of 1980, Pub.L. No. 96–611, § 7(c)(6), 94 Stat. 3568 (1980); *Zappitello v. Moses*, 458 N.W.2d 784, 786 (S.D.1990). In this case, ignoring Virginia's present "home state" status to determine custody by recognizing Wyoming jurisdiction under tenuous and unmerited reliance on one of the overlapping UCCJA/PKPA jurisdictional criteria would circumvent the purposes of both Acts.[6]

Because the consent order for temporary custody[7] was signed by the mother and

---

**5.** The record also contains a Motion to Clarify Prior Ruling submitted by the father's Virginia counsel and dated January 14, 1992. Counsel apparently sought to have Judge Schell take further action by contacting Judge Hartman to find out why Wyoming was not granting full faith and credit to Judge Schell's December 3, 1991 temporary custody order. There is nothing in either the Virginia or Wyoming records to indicate what Judge Schell may have done with this motion.

**6.** If the UCCJA and PKPA conflict, the PKPA preempts state child custody jurisdiction law.

U.S. Const. art. VI, cl. 2 (supremacy clause); Wyo. Const. art. 1, § 37. *See also Quenzer v. Quenzer*, 653 P.2d 295, 299 (Wyo.1982), *cert. denied* 460 U.S. 1041, 103 S.Ct. 1436, 75 L.Ed.2d 794 (1983) and *In re McBride*, 469 So.2d 645, 646 (Ala.Civ.App.1985).

**7.** *Consent Order*

I John S. Griffin and I Melissa V. Presnell do hereby agree to the following with regard to the temporary custody of our son Spencer B. Griffin:

father in Virginia on April 10, 1991 and entered by the court, there has not yet been any formal custody determination made by any court. *See* Wyo.Stat. § 20–5–103(a)(vi) and Va.Code Ann. § 20–125(6) (Michie 1990). Both the PKPA and the UCCJA provide a jurisdictional preference for the child's "home state" immediately preceding an application for an original custody determination. 28 U.S.C.S. § 1738A(c)(2)(A)(ii); Wyo.Stat. § 20–5–104(a)(i).

W.S. 20–5–107 provides prerequisites to a Wyoming district court before exercising jurisdiction in a custody proceeding. Wyo. Stat. § 20–5–107(a) states:

> A court of this state shall not exercise its jurisdiction under this act if at the time of filing the petition a proceeding concerning the custody of the same child was pending in a court of another state exercising jurisdiction substantially in conformity with this act, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

In this case, the mother had not yet been properly served with process of the pending Virginia custody proceeding when she filed her petition in the Wyoming district court. Consequently, the Wyoming district court was uninformed of the pending Virginia proceeding at the time of the mother's filing. Wyo.Stat. § 20–5–107(c) provides the procedural mechanism in the event, as in this case, that the court is notified of pending proceedings in another state (*supra* n. 3).

After learning of the pre-existent Virginia custody proceeding, the Wyoming district judge promptly communicated with the Virginia court pursuant to Wyo.Stat. § 20–5–107(c). However, the Wyoming proceeding was not stayed pending resolution of the "more appropriate forum" question *by the Virginia court* in order to secure Virginia court determination of whether to exercise jurisdiction or relinquish to the Wyoming district court.

Virginia has adopted a version of the UCCJA very similar in text and application to Wyoming's version of the Act. Va.Code Ann. § 20–125 through § 20–146. Va.Code Ann. § 20–126 (Michie 1990) states in part:

> **Grounds for jurisdiction.**—A. A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
>
> 1. This Commonwealth (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this Commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth[.]

In this case, Virginia had been the child's home state nine months immediately preceding commencement of the father's Virginia custody proceeding, the child was absent from the state because of his mother's

John S. Griffin shall have legal custody until a permanent Custody agreement can be reached.

John S. Griffin shall provide for all of Spencer B. Griffin's physical expenses; food, clothing, shelter, medical and babysitting expenses. Spencer B. Griffin shall reside at John S. Griffin's permanent address at 1740 Dressage Drive, Reston, VA 22090 until a permanent custody agreement can be reached.

Melissa V. Presnell shall have the option to continue living at 1740 Dressage Drive, Reston, VA 22090 until a permanent custody agreement is reached.

Spencer B. Griffin shall not be removed from 1740 Dressage Dr. without the knowledge and consent of both parents.

Both parents shall have full reasonable access to Spencer B. Griffin.

/s/
John S. Griffin
4/10/91

/s/
Melissa V. Presnell
4–10–91

/s/
Judge
A COPY TESTE:
BARBARA J. DAYMUDE, Clerk
By: /s/
Deputy Clerk

removal of the child to Wyoming for less than two months, and the father continued to live in Virginia. Thus, all of Virginia's statutory requirements to assume jurisdiction were met pursuant to Va.Code Ann. § 20–126(A)(1)(ii).

Further, the Virginia Supreme Court set forth its understanding of the general purposes of the UCCJA in *Middleton v. Middleton,* 227 Va. 82, 314 S.E.2d 362, 367 (1984):

> We perceive that the Virginia UCCJA was enacted to avoid jurisdictional competition and conflict with courts of other states in matters of child custody; to promote cooperation with courts of other states so that a custody decree is rendered in a state which can best decide the issue in the interest of the child; to assure that litigation over the custody of a child ordinarily occurs in the state that is most closely connected with the child and his family and where significant evidence concerning his care, protection, training, and personal relationships is most readily available; to assure that the courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state; to discourage continuing controversies over child custody; to deter abductions and other unilateral removals of children undertaken to obtain custody awards; to facilitate the enforcement of foreign custody orders and to avoid relitigating for-

eign custody decisions in this state so far as possible; and to promote the exchange of information and other forms of mutual assistance between courts of this state and those of other states concerned with the same child.

Thus, because of the Virginia court's actions to date and the comparable statutory and policy elements in place, Virginia satisfies the requirement in Wyo.Stat. § 20–5–107(a) that compels Wyoming to decline jurisdiction if a court in another state exercises jurisdiction "substantially in conformity with this act * * *." Unless and until the Virginia court either finds that Wyoming is a more appropriate forum or stays its proceedings for some other reason, Wyoming has no jurisdiction to determine permanent custody in the face of the temporary custody order existent in Virginia in its home state status of residency of the child.

Of equal importance, the respondent's partial compliance with the UCCJA provisions in Wyo.Stat. § 20–5–107(c) and § 20–5–120 through § 20–5–123 do not overcome either of the statutory barriers to Wyoming assuming jurisdiction in this case: (1) under Wyo.Stat. § 20–5–104, the Wyoming district court could not properly assume jurisdiction because it fails to satisfy any of the four jurisdictional criteria set forth in the statute;[8] and (2) under 28 U.S.C.S. § 1738A, the Wyoming district court was

---

**8.** First, Wyoming was not, by definition, the child's "home state" at the commencement of the proceeding. Wyo.Stat. § 20–5–104(a)(i).

Second, we find nothing in the record to indicate that "significant connection[s]" exist as between the child and/or the mother with the state of Wyoming such that the "best interest[s] of the child" mandate Wyoming jurisdiction. Wyo.Stat. § 20–5–104(a)(ii). Wyo.Stat. § 20–5–104(b) states that mere physical presence of the child and one parent is not sufficient to confer jurisdiction. Further, the UCCJA "significant connection" criteria is eliminated as a ground for jurisdiction under the PKPA where, as here, there is a "home state"—Virginia. *See* Charlow, *Jurisdictional Gerrymandering and the Parental Kidnapping Prevention Act,* 25 Fam.L.Q. 299, 308 (1991).

Third, with the exception of a single, conclusory and unsupported statement in pleading by the mother's counsel that the father has a "volatile temper" and "shook said minor child by the

upper arms * * *," there is nothing in the signed affidavits to provide evidence for "emergency jurisdiction" to be available under Wyo. Stat. § 20–5–104(a)(iii). Likewise, there is no admissible evidence that the father abandoned or threatened the child with mistreatment. Certainly, the affidavits are preclusively determinative to the contrary as is the temporary custody order duly entered in the Virginia court.

Fourth, Wyo.Stat. § 20–5–104(a)(iv) is clearly unavailable to confer jurisdiction because Virginia *has* jurisdiction as the child's "home state" pursuant to Va.Code Ann. § 20–126(A)(1) and the Virginia court, at least at this point, has not declined to exercise jurisdiction on the basis of Wyoming or some other state being a more appropriate forum to determine child custody and had earlier exercised jurisdiction with the Custody Proceeding No. 1 by entry of the temporary custody order as a stipulated resolution of that proceeding.

similarly precluded from exercising jurisdiction by four parallel jurisdictional criteria. 28 U.S.C.S. § 1738A(c).

Respondent argues that he "has not exercised child custody jurisdiction, but has invoked jurisdiction to decide whether he has custody jurisdiction * * *." In that sense, respondent is claiming that he has not exercised custody jurisdiction at all and thus has not violated his statutory duty to defer to the Virginia court pursuant to Wyo.Stat. § 20–5–107(a) ("A court of this state shall not exercise its jurisdiction under this act if at the time of filing the petition a proceeding concerning the custody of the same child was pending in a court of another state * * *."). If this case is viewed in that light, the PKPA would *not* apply here because this is not a case in which *two* states would be asserting a jurisdictional interest in determining custody. Regardless of how respondent characterizes his actions in taking the matter under advisement and ordering that the child not be removed from Wyoming, the simple fact remains that these actions are directly tied to the Virginia court's jurisdictional authority to determine custody. To accept respondent's argument that he was *not* exercising jurisdiction to determine child custody would create a jurisdictional stalemate in total contravention to the underlying purposes of both the Wyoming UCCJA and the federal PKPA.

We hold that just as respondent is foreclosed from exercising jurisdiction under Wyoming's version of the UCCJA, respondent is similarly foreclosed by the PKPA. 28 U.S.C.S. § 1738A(g) establishes the conditions under which a state court must refrain from entertaining a custody proceeding when a proceeding in the same matter is pending in another state:

> A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.

*Compare* 28 U.S.C.S. § 1738A(g) with Wyo.Stat. § 20–5–107(a).

In effect, this decision resembles the analysis and result in *E.P. v. District Court of Garfield County*, 696 P.2d 254 (Colo.1985). In *E.P.*, the Colorado Supreme Court cited Colorado's version of the UCCJA and deferred modification of custody to the Wyoming court that had entered an original custody decree. The court stated:

> We conclude that the UCCJA requires the juvenile court to stay any further action on the dependency proceeding and to refer the case to the Wyoming court that entered the original custody decree so that the state of Wyoming can determine whether it will assume jurisdiction over the matter of custody.

*Id.* at 263.

█ A foreign state which is neither a decree state nor a home state may not assume jurisdiction in contravention to the UCCJA and PKPA preference for "home state" jurisdiction. *See generally, Matter of B.B.R.*, 566 A.2d 1032, 1041–42 (D.C.App.1989), Schwelb, A.J., concurring; Charlow, *Jurisdictional Gerrymandering and the Parental Kidnapping Prevention Act*, 25 Fam.L.Q. 299, 307–08 (1991). Consequently, the Wyoming district court is required to relinquish jurisdiction to the Virginia court for further proceedings in that venue.

## IV. CONCLUSION

Remanded to the district court for entry of an order in accord herewith. The Clerk of the Fifth Judicial District Court for Washakie County, Wyoming shall prepare, duly authenticate and mail a copy of the record of proceedings and pleadings in its court to the Juvenile and Domestic Relations District Court of Fairfax County, Virginia, 4000 Chainbridge Road, Fairfax, VA 22030.