667 So.2d 74 (1994)
Ex parte J.R.W.
(Re S.C. v. J.R.W.).
1921580.
Supreme Court of Alabama.
March 18, 1994.
As Modified on Denial of Rehearing May 6, 1994.
*75 Deborah S. Seagle of Smith & Seagle, Dothan, for petitioner.
S.C., pro se.
ALMON, Justice.
J.R.W. petitioned for a writ of certiorari to the Court of Civil Appeals, asserting that the judgment of that court conflicted with other decisions of that court and this one. The Court of Civil Appeals reversed a finding of contempt against S.C. by Judge Holloway of the Houston County Circuit Court. This Court granted J.R.W.'s petition for certiorari review. The general issue is whether the Court of Civil Appeals erred in reversing the judgment of the Houston County Circuit Court holding S.C. in contempt of its order granting J.R.W. temporary custody of his minor child K.B.W. The more narrow, dispositive questions, however, are (1) Whether a Texas protective order granting custody of K.B.W. to her stepfather S.C. and prohibiting J.R.W. from having contact with K.B.W. was contrary to the Parental Kidnapping Prevention Act of 1980, Pub.L. No. 96-611, 94 Stat. 3569 (1980) (codified at 28 U.S.C. § 1738A) (hereinafter "PKPA") and therefore was not entitled to full faith and credit and did not provide a defense to the contempt proceeding, and (2) Whether the Alabama circuit court had in personam jurisdiction over S.C. to hold him in contempt for his willful refusal to produce K.B.W. as ordered.
This appeal arises from a protracted and vigorous interstate child custody dispute between, on one side, J.R.W., the natural father of the minor child K.B.W., and, on the other side, T.P.W.C., the mother of K.B.W. and former wife of J.R.W., and her present husband S.C. This anfractuous litigation has continued with undiminished ferocity for over seven years and has involved the trial and appellate courts of both Alabama and Texas. S.C. v. J.R.W., 667 So.2d 72 (Ala.Civ.App. 1993) (reversing judgment of contempt against S.C.) (being reviewed in this certiorari proceeding); T.P.W.C. v. J.R.W., 622 So.2d 931 (Ala.Civ.App.1993) (affirming judgment of contempt against T.P.W.C.); Ex parte J.R.W., 630 So.2d 447 (Ala.Civ.App.1992) (granting petition for writ of prohibition); Ex parte T.P.W.C., 601 So.2d 218 (Ala.1992) (denying summarily petition for writ of mandamus); White v. Blake, 859 S.W.2d 551 (Tex. Ct.App.1993) (denying writ of mandamus in 12-92-00401-CV; denying in part and conditionally granting in part writ of mandamus in 12-92-00400-CV; and granting conditionally writ of mandamus in 12-92-00386-CV). The history of this case is long and convoluted; therefore, we recount only those facts relevant to the issues raised in this certiorari review.[1]
J.R.W. and T.P.W.C. were divorced by a judgment of the Houston County Circuit Court in 1983. Under the judgment, custody of K.B.W. was given to T.P.W.C. and J.R.W. received rights to reasonable visitation. In June 1991, the Houston County Circuit Court entered a pendente lite order, which, inter alia, granted J.R.W. unsupervised visitation with K.B.W. at specific times and ordered T.P.W.C. to deliver the child at the beginning of all visitation periods. In October 1991, without giving notice either to J.R.W. or to the court, S.C. and T.P.W.C. took K.B.W. and moved to Smith County, Texas.
In March 1992, J.R.W. filed a petition with the Houston County Circuit Court, seeking to have T.P.W.C. held in contempt for failing to comply with the June 1991 visitation order and seeking a change in custody. On June 2, 1992, the Houston County Circuit Court conducted a hearing on J.R.W.'s petition. T.P.W.C. appeared at the hearing, while S.C. apparently remained with K.B.W. in Smith County, Texas. On June 3, 1992, the Houston County Circuit Court entered an order, holding T.P.W.C. in contempt of court for failing to comply with the visitation provision of the June 1991 order and ordering her *76 jailed until she complied.[2] Later the same day, T.P.W.C. was released after posting bond. On June 24, 1992, the court entered an order giving J.R.W. immediate unsupervised visitation and ordering T.P.W.C. to produce K.B.W. for this purpose.
On June 4, 1992, S.C. filed in the Smith County, Texas, District Court an application for a protective order; the application was supported by an affidavit asserting that J.R.W. had sexually abused K.B.W. and that he posed an imminent threat of physical harm to the child. After granting a temporary protective order, the Smith County District Court conducted a hearing on S.C.'s application on July 2, 1992. Accompanied by counsel, J.R.W. made a special appearance to challenge the jurisdiction of the court. After denying J.R.W.'s "motion for special appearance," see 859 S.W.2d at 556, the Texas district court received evidence presented by S.C. in support of the allegations of his application. J.R.W. did not participate in this part of the proceedings. The Texas district court subsequently entered a "protective order," prohibiting J.R.W. from going within 200 yards of K.B.W., communicating with her, or removing her from that court's jurisdiction. The "protective order" also granted exclusive custody of K.B.W. to S.C. and ordered that K.B.W. undergo psychological examination.
On July 3, 1992, J.R.W. filed in the Houston County Circuit Court a motion to add S.C. as a party to the action in Houston County; a motion to authorize and appoint a special process server to serve process on S.C. in Texas; and a motion to enjoin S.C. from interfering with J.R.W.'s "possession" of K.B.W., aiding T.P.W.C. in unlawfully concealing K.B.W., or otherwise violating the orders of the Houston County Circuit Court. On July 6, 1992, the Houston County Circuit Court entered an order granting these motions and entered ex mero motu an order amending the visitation provision of the June 24, 1992, order and ordering S.C., or any other person having "possession," to produce K.B.W. on July 20, 1992, in the event T.P.W.C. did not purge herself of contempt by producing K.B.W. This order and the other July 6, 1992, orders were served on S.C. in Smith County, Texas, on July 22, 1992.
Meanwhile, T.P.W.C., who was again in jail for contempt of court, petitioned the Houston County Circuit Court for a writ of habeas corpus on July 6, 1992, arguing that she was due to be released because the protective order entered by the Smith County District Court made her unable to purge herself of contempt, by awarding exclusive custody of K.B.W. to S.C.; J.R.W. filed a pleading in opposition to this habeas petition, arguing, inter alia, that the protective order of the Smith County District Court was invalid because, he said, the Texas district court lacked "subject matter" jurisdiction under the PKPA because of the Houston County Circuit Court's continuing exercise of jurisdiction over the action. The Houston County Circuit Court denied T.P.W.C.'s petition for a writ of habeas corpus and, on the same day, entered an order awarding temporary custody of K.B.W. to J.R.W. and reserving jurisdiction to modify.
On July 22, 1992, S.C. was personally served in Smith County, Texas, and on August 20, 1992, the Houston County Circuit Court granted J.R.W.'s petition for rule nisi requesting that S.C. be ordered to appear and show cause why he should not be held in contempt for failing to produce K.B.W. The circuit court's August 20, 1992, order was served on S.C., and on September 16, 1992, S.C. entered a special appearance through counsel challenging the in personam jurisdiction of the court. After a hearing, the circuit court held S.C. in contempt for refusing to make K.B.W. available to J.R.W. in compliance with the court's orders. The circuit court ordered S.C. to serve five days in jail and imposed a fine of $100. The circuit court also awarded $1,500 in attorney fees to J.R.W.
S.C. appealed pro se to the Alabama Court of Civil Appeals, arguing, inter alia, that the circuit court had erred in holding him in *77 contempt because, he said, under the Texas district court's "protective order" he could not legally give "possession" of the child to J.R.W. and because, he said, the Alabama circuit court did not have in personam jurisdiction to hold him in contempt of court. The Court of Civil Appeals agreed and reversed the contempt judgment, holding that the Texas district court had jurisdiction under § 1738A(c)(2)(C) of the PKPA to enter its order and that the Alabama circuit court had not had in personam jurisdiction over S.C.
We note initially that the inability of a party to obey a court order is ordinarily a defense to a charge of contempt. Hill v. Hill, 562 So.2d 255 (Ala.Civ.App.1990); Ex parte Jefferson County Dep't of Human Resources, 555 So.2d 1075 (Ala.Civ.App.1989), cert. denied, 555 So.2d 1077 (Ala.1990); Thompson v. Thompson, 521 So.2d 46 (Ala. Civ.App.1988).
The contentions of the parties do not concern the correctness of any factual finding on which the circuit court based its judgment of contempt; rather, the issues raised here are legal. In his petition, J.R.W. basically contends that the Texas district court was prohibited by the PKPA from entering its "protective order" and therefore that its order is not entitled to full faith and credit under the PKPA and, not being entitled to full faith and credit, does not constitute a defense to a charge of contempt. J.R.W. also argues that S.C.'s voluntary involvement in this custody dispute constitutes sufficient contacts with Alabama to establish in personam jurisdiction.
With regard to the first issue, the Court of Civil Appeals held that § 1738A(c)(2)(C) of the PKPA provided the basis for the order entered by the Texas district court. Similarly, in ruling on one of three mandamus petitions filed by J.R.W. challenging the jurisdiction of the Texas district court, the Court of Appeals of Texas also held that the Texas district court had jurisdiction under § 1738A(c)(2)(C) and under Chapter 71 of the Texas Family Code to enter the "protective order" against J.R.W. White v. Blake, 859 S.W.2d 551, 558-59 (Tex.Ct.App.1993). The Court of Appeals of Texas considered it noteworthy that the Alabama Court of Civil Appeals had reached the same conclusion. 859 S.W.2d at 559 n. 10.
In 1980, Congress enacted the PKPA to establish national standards to be applied in interstate custody disputes to determine which state court should exercise jurisdiction and to determine the effect to be given child custody determinations by state courts of other jurisdictions.[3] In Thompson v. Thompson, 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988), the United States Supreme Court summarized the circumstances prompting the enactment of the PKPA and the purposes it was designed to achieve:
"At the time Congress passed the PKPA, custody orders held a peculiar status under the full faith and credit doctrine, which requires each State to give effect to the judicial proceedings of other States, see U.S. Const., Art. IV, § 1; 28 U.S.C. § 1738. The anomaly traces to the fact that custody orders characteristically are subject to modification as required by the best interests of the child. As a consequence, some courts doubted whether custody orders were sufficiently `final' to trigger full faith and credit requirements, see, e.g., Hooks v. Hooks, 771 F.2d 935, 948 (CA6 1985); McDougald v. Jenson, 596 F.Supp. 680, 684-685 (ND Fla.1984), aff'd, 786 F.2d 1465 (CA11), cert. denied, 479 U.S. 860, 107 S.Ct. 207, 93 L.Ed.2d 137 (1986), and this Court had declined expressly to settle the question. See Ford v. Ford, 371 U.S. 187, 192, 83 S.Ct. 273, 276, 9 L.Ed.2d 240 (1962). Even if custody orders were subject to full faith and credit requirements, the Full Faith and Credit Clause obliges States only to accord the same force to judgments as would be accorded by the court of the State in which the judgment was entered. Because courts entering custody orders generally retain the power to modify them, courts in other States were no less entitled to *78 change the terms of custody according to their own views of the child's best interest. See New York ex rel. Halvey v. Halvey, 330 U.S. 610, 614-615, 67 S.Ct. 903, 906, 91 L.Ed. 1133 (1947). For these reasons, a parent who lost a custody battle in one State had an incentive to kidnap the child and move to another State to relitigate the issue. This circumstance contributed to widespread jurisdictional deadlocks like this one, and more importantly, to a national epidemic of parental kidnapping....
"A number of States joined in an effort to avoid these jurisdictional conflicts by adopting the Uniform Child Custody Jurisdiction Act (UCCJA), 9 U.L.A. §§ 1-28 (1979). The UCCJA prescribed uniform standards for deciding which State could make a custody determination and obligated enacting States to enforce the determination made by the State with proper jurisdiction. The project foundered, however, because a number of States refused to enact the UCCJA while others enacted it with modifications. In the absence of uniform national standards for allocating and enforcing custody determinations, noncustodial parents still had reason to snatch children and petition the courts of any of a number of haven States for sole custody."
484 U.S. at 180-81, 108 S.Ct. at 516-17. To remedy the ills recounted above, Congress enacted the PKPA. Id. at 181, 108 S.Ct. at 517. The PKPA, therefore, requires a court of one state to give full faith and credit to another state's custody determinations that meet the requirements of the PKPA, and the PKPA defines the conditions under which one state's custody determination may be modified by a court of another state.
Title 28 U.S.C. § 1738A, which codifies the PKPA, states in pertinent part:
"(a) The appropriate authorities of every State shall enforce according to its terms and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.
". . . .
"(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if
"(1) such court has jurisdiction under the law of such State; and
"(2) one of the following conditions is met:
"(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;
"(B) (i) it appears that no other State would have jurisdiction under subparagraph (A) and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
"(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;
"(D) (i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or
"(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.
"(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions *79 of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.
"(e) Before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child.
"(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if
"(1) it has jurisdiction to make such a child custody determination; and
"(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.
"(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination."
After carefully reviewing the PKPA, the Uniform Child Custody Jurisdiction Act (UCCJA) as adopted by Alabama and Texas,[4] the relevant case law of this jurisdiction and other jurisdictions, and the facts presented by this record, we conclude that the Alabama Court of Civil Appeals, as well as the Court of Appeals of Texas, erred in holding that the "emergency" provision of § 1738A(c)(2)(C) gave the Texas district court authority to enter its "protective order." See Robertson v. Robertson, 532 So.2d 1014 (Ala.Civ.App. 1988); Via v. Johnston, 521 So.2d 1324 (Ala. Civ.App.1987); Mitchell v. Mitchell, 437 So.2d 122 (Ala.Civ.App.1982). In their respective opinions, both courts of appeals reasoned that the Texas district court had authority to act under the PKPA because its order was consistent with the requirements of § 1738A(c). This reasoning, however, overlooks the fact that an Alabama circuit court had already made a custody determination, as defined by the PKPA,[5] before S.C. filed his application for a protective order in the Texas district court and the fact that the Alabama circuit court not only had retained jurisdiction, but was also vigorously exercising it.
A number of state courts have held that notwithstanding the continuing jurisdiction of another court of a sister state, a court may exercise "emergency" jurisdiction under the UCCJA to modify temporarily the initial custody determination of the other state court so as to prevent immediate and irreparable harm to children.[6]Hache v. Riley, 186 N.J.Super. 119, 451 A.2d 971, 975-76 (Ch.Div. 1982); see also In re Pima County Juvenile Action No. J-78632, 147 Ariz. 527, 711 P.2d 1200 (Ariz.App.1985), approved in pertinent part and vacated on other grounds, 147 Ariz. 584, 712 P.2d 431 (Ariz.1986); Brock v. District Court of Boulder County, 620 P.2d 11, 14 (Colo.1980); Nelson v. Nelson, 433 So.2d 1015, 1019 (Fla.Dist.Ct.App.1983); Silva v. Tucker, 500 A.2d 947, 949 (R.I.1985); Gainey v. Gainey, 237 Ill.App.3d 868, 604 N.E.2d 950 (1992); Garza v. Harney, 726 S.W.2d 198 (Tex.Ct.App.1987); State in Interest of D.S.K., 792 P.2d 118, 126-28 (Utah App. 1990); In re A.L.H., 630 A.2d 1288 (Vt.1993). See generally Bodenheimer, Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA, 14 Fam.L.Q. 203, 225-26 (1981). These courts, however, have narrowly construed "emergency" jurisdiction under the UCCJA to be temporary and to be limited to extraordinary circumstances involving substantial and imminent *80 harm to a child. See, generally, Annotation, Abandonment and Emergency Jurisdiction of Court Under § 3(a)(3) of the Uniform Child Custody Jurisdiction Act (UCCJA) and the Parental Kidnapping Prevention Act (PKPA), 28 USCS § 1738A(c)(2)(C), 5 A.L.R.5th 788, 803 (1992). Thus, courts have held, "emergency" jurisdiction under the UCCJA does not confer authority to make a "permanent" modification of a prior custody determination of another state's court that has continuing jurisdiction. E.g., In re Joseph D., 19 Cal.App.4th 678, 23 Cal.Rptr.2d 574, 582-83 (1993); Hache, 186 N.J.Super. at 128, 451 A.2d at 975-76; Gainey, 237 Ill. App.3d at 871, 604 N.E.2d at 952; In re in Interest of L.W., 241 Neb. 84, 102-03, 486 N.W.2d 486, 498-99 (1992); Garza, 726 S.W.2d at 202-03; D.S.K., 792 P.2d at 127-28; A.L.H., 630 A.2d at 1291. See, generally, Annotation, supra, 5 A.L.R.5th at 799 n. 1. One court has stated that such "emergency" jurisdiction continues only until the protective measures connected with the emergency jurisdiction have been taken, at which time jurisdiction should be relinquished to the court with continuing jurisdiction, Hache, 186 N.J.Super. at 129, 451 A.2d at 976, while several others have stated that it continues only until the court assuming the "emergency" jurisdiction communicates with the court that made the initial custody determination to determine the proper forum to hear the abuse or neglect claims, D.S.K., 792 P.2d at 127; Curtis v. Curtis, 789 P.2d 717, 723 (Utah App.1990).
The Alabama Court of Civil Appeals and the Court of Appeals of Texas, therefore, seem to be extending this construction of the UCCJA to the PKPA by holding that the "emergency" provision of § 1738A(c)(2)(C) of the PKPA gave the Texas district court the authority to enter the protective order against J.R.W. and award custody to S.C., notwithstanding that the exercise of such authority modified the custody determination of the Alabama circuit court, which had continuing, exclusive jurisdiction under § 1738A(d) of the PKPA.[7] We acknowledge that several other state courts appear to have recognized the exercise of "emergency" authority in these circumstances under § 1738A(c)(2)(C) of the PKPA. Curtis v. Curtis, 574 So.2d 24 (Miss.1990); State in Interest of D.S.K., 792 P.2d 118 (Utah App. 1990).
The facts of this case, however, make it unnecessary to decide whether, as some courts seem to have held, the PKPA implicitly grants a court "emergency" authority under § 1738A(c)(2)(C) to modify the custody determination of a court of another state that retains exclusive, continuing jurisdiction under § 1738A(d) of the PKPA. To avoid seriously abrogating the PKPA's clear and otherwise uncompromising provisions governing modification of custody determinations, any construction of "emergency" authority under the PKPA comparable to the construction given by some courts to the UCCJA would undoubtedly have to limit this authority to those temporary modifications necessary to protect the child from substantial and imminent harm.
The facts of this case make it very clear that the Texas district court did not contemplate a temporary modification of the custody determination of the Alabama circuit court. The Texas district court entered its "protective order" over a year and a half ago. The Court of Appeals of Texas subsequently denied J.R.W.'s petition for a writ of mandamus; that petition challenged the "protective order" on the same grounds argued *81 by J.R.W. to this Court, and, as far as we can determine, the order of the Texas district court remains unvacated and unmodified today. Thus, in direct contravention of the order of the Alabama circuit court, J.R.W. has been denied any contact with K.B.W. for over a year and a half by virtue of the "protective order" of the Texas district court. From this we can only conclude that the Texas district court's order was not merely a temporary modification of the custody determination for the purpose of preventing substantial and imminent harm to K.B.W.; rather, it effected what is in substance a "permanent" modification of the custody determination of the Alabama circuit court. Thus, even if the kind of "emergency" modification authority described above exists under the PKPA, the Texas district court exceeded it by making what can be viewed only as a "permanent" modification of the custody determination of the Alabama circuit court.
This Court is not aware that any court of any jurisdiction has held that the "emergency" provision of § 1738A(c)(2)(C) gives a court the authority to modify "permanently" the custody determination of a court of another state that properly continues to exercise jurisdiction. Allowing a state court to modify "permanently" a prior custody determination of another court solely on the basis of the "emergency" provision of § 1738A(c)(2)(C) would thwart the very purposes for which the PKPA was enacted. One can easily imagine the havoc such a construction of the PKPA would cause, given the frequency with which allegations of abuse, particularly allegations of sexual abuse, become part of child custody litigation.
Therefore, if the Texas district court had authority to enter its "protective order," it had it under the "modification" authority provided by § 1738A(f).[8] Subsections 1738A(a) and (f) are dispositive here, not § 1738A(c).[9]
Under § 1738A(f), a court of one state may modify a custody determination of a court of another state if the court seeking to modify has jurisdiction to make such a modification and if the court of the other state no longer has jurisdiction or has declined to exercise its jurisdiction to modify. Because the Court of Appeals of Texas held that the Texas district court had jurisdiction under Texas law to enter its order giving custody to S.C. and because the custody determination of the Texas district court was otherwise consistent with the provisions of *82 § 1738A(c) by virtue of the fact that Texas was K.B.W.'s "home state" when S.C. commenced the Texas proceeding, the critical questions are whether the Alabama circuit court had jurisdiction and, if it continued to have jurisdiction, whether it had declined to exercise it.
Under § 1738A(d), a state court that has made a custody determination consistent with the requirements of the PKPA continues to have jurisdiction under the PKPA if it continues to have jurisdiction under the law of its state and if that state remains the residence of the child or of any contestant. Under § 30-3-23(a)(1)b. of the Alabama enactment of the Uniform Child Custody Jurisdiction Act, the Alabama circuit court retained jurisdiction under Alabama law to modify its initial child custody determination. Alabama remained the residence of J.R.W. Therefore, the Alabama circuit court had continuing jurisdiction under the PKPA. § 1738A(c)(1) and (d).
We now consider whether the Alabama circuit court ever declined to exercise its jurisdiction to modify. The record in this case clearly shows that from the beginning of this custody dispute, the Alabama circuit court consistently sought to exercise its jurisdictionmost often, we note, to enforce its orders against T.P.W.C. and S.C.
From the foregoing, we hold, therefore, that the Texas district court was prohibited by the PKPA from modifying the prior custody determination of the Alabama circuit court. Robertson v. Robertson, 532 So.2d 1014 (Ala.Civ.App.1988); Lyon v. Lyon, 618 So.2d 127 (Ala.Civ.App.1993) (Alabama court, which entered initial custody determination, had "continuing preferred" jurisdiction under PKPA, notwithstanding subsequent Virginia judgment terminating father's visitation rights); see also Bock v. Bock, 824 P.2d 723 (Alaska 1992) (Alaska court could not exercise jurisdiction over custody matter as long as Kentucky court continued to exercise jurisdiction consistent with PKPA); Kumar v. Superior Court, 32 Cal.3d 689, 186 Cal.Rptr. 772, 652 P.2d 1003 (1982); In re Zierenberg, 11 Cal.App.4th 1436, 16 Cal.Rptr.2d 238 (1992) (California court could not exercise jurisdiction under PKPA because Puerto Rico court, which made initial custody determination, continued to have jurisdiction and had not declined to exercise it); In re Clausen, 442 Mich. 648, 502 N.W.2d 649 (1993) (Michigan court did not have jurisdiction under PKPA to modify Iowa custody determination when Iowa court had not declined to exercise its jurisdiction to modify); Serna v. Salazar, 98 N.M. 648, 651 P.2d 1292 (1982); Hangsleben v. Oliver, 502 N.W.2d 838 (N.D.1993) (North Dakota court lacked jurisdiction under PKPA to modify prior Minnesota custody determination); Crump v. Crump, 821 P.2d 1172 (Utah Ct.App.1991), cert. granted, 843 P.2d 516 (Utah 1992) (Utah court did not have jurisdiction to modify Montana custody determination because Montana court had continuing exclusive jurisdiction under PKPA); Michalik v. Michalik, 172 Wis.2d 640, 494 N.W.2d 391 (1993) (continuing, exclusive jurisdiction of the Indiana court under PKPA precluded Wisconsin court from modifying prior custody determination of Indiana court); Griffin v. District Court, 831 P.2d 233 (Wyo.1992) (Wyoming UCCJA and the PKPA precluded Wyoming court from exercising jurisdiction over custody matter because Virginia court had not relinquished jurisdiction). The order of the Texas district court, therefore, is contrary to the PKPA and is not entitled to full faith and credit. In re Colburn, 497 So.2d 182 (Ala.Civ.App.1986).
In filing his application for a protective order in the Texas district court one day after the Alabama circuit court had held T.P.W.C. in contempt for failing to comply with the visitation provision of its order, S.C. was clearly attempting to circumvent the jurisdiction and order of the Alabama circuit court and to relitigate the issues of custody and visitation, and, more importantly, the claims of sexual abuse that had earlier been alleged and adjudicated in J.R.W.'s favor in Alabama. T.P.W.C. did not appeal from the Alabama circuit court's 1986 finding of no sexual abuse, and the allegations in the Texas court could have pertained only to incidents occurring within the Alabama circuit court's jurisdiction, because J.R.W. had not seen K.B.W. after T.P.W.C. and S.C. had taken her to Texas in October 1991. Under *83 the clear and unambiguous provisions of the PKPA, the jurisdiction of the Alabama circuit court over these matters was exclusive and continuing, and under federal law its orders were entitled to be given full faith and credit by the Texas district court.
Because the unauthorized order of the Texas district court does not prevent S.C. from complying with the Alabama circuit court's order, and because S.C. appears otherwise fully capable of complying with the terms of the Alabama circuit court's order to produce K.B.W. and purging himself thereby of contempt, S.C. has no defense to the judgment of contempt based on his alleged inability to obey.
The second issue is whether the Alabama circuit court had in personam jurisdiction over S.C. to hold him in contempt for his willful refusal to produce K.B.W. as ordered. The Court of Civil Appeals held that the circuit court did not. Although the record is sparse, we think that it contains enough evidence to support the Alabama circuit court's holding that S.C. had sufficient contacts with the state of Alabama to permit it hold him in contempt of court.
Rule 4.2(a)(2), Ala.R.Civ.P., states the requirements for in personam jurisdiction over a nonresident defendant:
"Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's
"....
"(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States."
In Murray v. Alfab, Inc., 601 So.2d 878 (Ala.1992), the Court stated the following general principles:
"Service of process under Rule 4.2(a)(2) has been held to be as far-reaching as due process permits. DeSotacho, Inc. v. Valnit Indus., 350 So.2d 447, 449 (Ala.1977). The constitutional guaranty of due process precludes a court from asserting jurisdiction over a defendant unless the defendant has sufficient contacts with the forum state. Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir.1990). The court may exercise either `general' or `specific' jurisdiction over a nonresident defendant. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn. 8-9, 104 S.Ct. 1868, 1872 nn. 8-9, 80 L.Ed.2d 404 (1984). General jurisdiction applies where a defendant's activities in the state are `substantial' and `continuous and systematic,' even if the cause of action is unrelated to those activities. Data Disc, Inc. v. Systems Tech. Assoc., 557 F.2d 1280, 1287 (9th Cir. 1977). Where general jurisdiction does not exist, a court may still exercise specific jurisdiction if the defendant has sufficient contacts with the forum state in relation to the cause of action.

"In a particular case, the kind of jurisdiction obtained depends upon the nature and the quality of the contacts, but in any case it is essential that there be some act by which the defendant purposely avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). It is the defendant's contacts with the forum state and not his contacts with the plaintiff that are relevant. Lakeside Bridge & Steel Co. v. Mountain State Construction Co., 597 F.2d 596 (7th Cir.1979), cert. denied, 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980), cited in Sporting Goods Distributors, Inc. v. Whitney, 498 F.Supp. 1088, 1091 (N.D.Fla.1980)."
601 So.2d at 883-84 (emphasis added). The nonresident defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court in the forum state. World-Wide *84 Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Thus, the reasonable foreseeability of suit in the forum state is critical to due process analysis. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985).
S.C. lived in Alabama in a marital relationship with T.P.W.C. and as the stepfather of K.B.W. while an extant custody order gave J.R.W. a right to reasonable visitation. In defiance of that order, S.C. played an active and important role in helping T.P.W.C. remove K.B.W. from Alabama for the purpose of denying J.R.W.'s right to reasonable visitation while this action was pending and being litigated before the Alabama circuit court. S.C.'s actions contravened the July 24, 1991, order of the Alabama circuit court regarding visitation rights and custody of K.B.W. and the July 6, 1992, order granting temporary custody to T.R.W. and ordering S.C. to produce K.B.W. if T.P.W.C. did not; the judgment of contempt subsequently entered against him, therefore, was the direct result of these acts and his later efforts to flout the order of the Alabama circuit court and avoid its jurisdiction. These facts show such contacts with Alabama that S.C. could reasonably foresee that he would be held in contempt of court for his actions. Therefore, we hold that the Court of Civil Appeals erred in holding that the Alabama circuit court lacked in personam jurisdiction to hold S.C. in contempt.
Based on the foregoing, we reverse the judgment of the Court of Civil Appeals and remand the cause.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, HOUSTON, STEAGALL, INGRAM, and COOK, JJ., concur.
MADDOX, J., dissents.
NOTES
[1] For a fuller account of the history of this case, we refer the reader to the opinion of the Texas Court of Appeals in White v. Blake, 859 S.W.2d 551 (Tex.Ct.App.1993), and the opinion of the Alabama Court of Civil Appeals in Ex parte J.R.W., 630 So.2d 447 (Ala.Civ.App.1992).
[2] After her petition for writ of habeas corpus was denied, T.P.W.C. appealed from the judgment of contempt. The Court of Civil Appeals affirmed in T.P.W.C. v. J.R.W., 622 So.2d 931 (Ala.Civ.App. 1993).
[3] The PKPA also provided for the establishment of a national system for locating children taken from one jurisdiction to another and concealed in connection with a child custody dispute. § 7(b), 94 Stat. at 3569.
[4] Alabama Code 1975, § 30-3-20 et seq.; Tex. Fam.Code Ann. §§ 11.51 to 11.75 (1986).
[5] 28 U.S.C. § 1738A(b)(3); infra note 8 (quoting, in pertinent part, definition of "custody determination" under the PKPA).
[6] In support of this construction of the UCCJA, courts have argued that although this interpretation of the UCCJA may encourage forum shopping by those seeking to circumvent the UCCJA, the best interests of children and the existence of traditional deterrents to frivolous litigation, such as the imposition of costs and sanctions, militate in favor of recognizing such jurisdiction in such extraordinary circumstances.
[7] The Court of Appeals of Texas has recognized that under § 11.53(a)(3)(B), Tex.Fam.Code Ann. (1986) (UCCJA), a court may exercise "emergency" jurisdiction to modify a custody determination temporarily to prevent immediate and irreparable harm to a child, pending proceedings in a sister state's court with continuing jurisdiction. Abderholden v. Morizot, 856 S.W.2d 829 (Tex.Ct. App.1993); Garza v. Harney, 726 S.W.2d 198 (Tex.Ct.App.1987). Like courts of other jurisdictions, the Texas Court of Appeals has emphasized that § 11.53(a)(3)(B) does not confer jurisdiction to make a permanent modification of a prior custody determination of another court. Abderholden, 856 S.W.2d at 833; Garza, 726 S.W.2d at 202-03. Our research reveals no decision, other than perhaps White v. Blake, 859 S.W.2d 551 (Tex.Ct.App.1993), in which a Texas appellate court has held that such "emergency" jurisdiction exists under the PKPA, much less one holding that such jurisdiction supports a permanent modification of a prior custody determination of a sister state's court.
[8] We acknowledge that a premise of our analysis here is that the "protective order" of the Texas district court constituted a "modification" of a "custody determination," as those terms are defined by the PKPA.

Although they are not argued by the parties, we note that the definitions of "custody determination" and "modification" under the PKPA are very broad. Section 1738A(b)(3) defines "custody determination" as a "judgment, decree, or other order of a court providing for the custody or visitation of a child, and includes permanent and temporary orders, and initial orders and modifications." Section 1738A(b)(5) defines "modification" as a "custody determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody determination concerning the same child, whether made by the same court or not." The "protective order" of the Texas district court states, in part: "IT IS ORDERED that Applicant, [S.C.], is granted exclusive possession of the child, the subject of this suit, [K.B.W.]."
Our reading of the opinion of the Court of Appeals of Texas in White v. Blake, 859 S.W.2d 551 (Tex.Ct.App.1993), leads us to believe that that court implicitly concluded that although the termination of the parental rights of J.R.W., which S.C. requested from the Texas district court, constituted a "modification" under the PKPA, the "protective order" did not. As we stated supra, without deciding whether the "emergency" modification authority described supra exists under the PKPA or whether a truly temporary protective order, which has the effect of modifying a prior custody determination, is a "modification," we conclude that in the circumstances of this case the "protective order" of the Texas district court, which has denied J.R.W. any contact with his daughter for over a year and a half, was indeed a "modification" of the "custody determination" of the Alabama circuit court.
[9] We acknowledge that the facts of this case may also present the issue whether the Texas district court was prevented from exercising jurisdiction under § 1738A(g) because this action was still pending in the Alabama circuit court in accordance with the jurisdictional requirements of the PKPA. See Ex parte Blanton, 463 So.2d 162 (Ala.1985). We do not address this issue, however, because in his petition to this Court, J.R.W. limits his arguments solely to whether the Texas district court had jurisdiction to modify the custody determination of the Alabama circuit court.